[Civ. No. 17747.   First Dist., Div. One.   Aug. 10, 1959.]

LOUCYLLE ADAMS BEHR et al., Appellants, v. COUNTY OF SANTA CRUZ, Respondent.

WILLIAM R. JUNK et al., Appellants, v. COUNTY OF SANTA CRUZ, Respondent.

Stephen Wyckoff and Lucas, Wyckoff & Miller for Appellants.

Wyckoff, Parker, Boyle & Pope, John L. McCarthy and Grunsky & Pybrum for Respondent.

BRAY, P. J.—Two actions by a number of property owners seeking damages to real and personal property from spread of a fire originating in a refuse dump owned and operated by defendant county were consolidated for trial. The two complaints are identical in their allegations except for parties plaintiff, and for the particular properties damaged, and are based upon three theories of recovery. The first count in each

complaint is based on the Public Liability Act (Gov. Code, § 53051 et seq.) and alleges dangerous and defective conditions. The second count alleges negligent operation by a county employee of a motor vehicle (self-propelled loader) which ignited a fire in the dump. The third count alleges maintenance of a nuisance. At the close of plaintiffs' evidence, on the court's suggestion that the third count did not properly allege nuisance, plaintiffs amended their complaints to set up fourth counts alleging nuisance. The court granted nonsuits as to the last three counts. The jury rendered verdicts in favor of defendant on the first counts. Plaintiffs appeal from the judgments thereon and claim to appeal from the orders granting nonsuits.

### QUESTIONS PRESENTED

1. Did plaintiffs effectively appeal from the orders granting nonsuits? Corollary to this question is—Is there a final judgment in the action?

2. Alleged error in admission and exclusion of evidence.

3. Was the granting of the nonsuits erroneous? Is the question moot?

### 1. APPEAL.

July 24, 1956, the minute orders granting the nonsuits were entered.

July 27, the jury verdicts were rendered.

August 3, judgments on the jury verdicts were entered.

September 20, notice of appeal was filed.[1]

The only formal judgments entered show on their faces that they apply only to the verdicts, and not to the granting of nonsuits. The notice of appeal refers only to the judgments entered August 3 and does not refer to the minute order of July 24. Thus, on the face of the record there is no appeal attempted from the orders granting nonsuits.[2] However, that fact under the circumstances here is not conclusive of the question of this court's jurisdiction to consider an appeal from the nonsuit orders. We first have to determine whether there has been a final judgment entered in the case.

[1] Plaintiffs moved for a new trial, thereby extending the time for appeal. The notice of appeal was timely, whether from the entry of the orders granting nonsuit or from the judgments on the verdicts.

[2] It is interesting to note that both parties assumed in their briefs that there was such an appeal and that this question was not raised until oral argument. Of course, the question of jurisdiction of this court to consider an appeal may be raised at any time.

We are satisfied that there has not. ▆ There can be only one judgment in any case between the same parties. (*Gombos v. Ashe,* 158 Cal.App.2d 517, 520 [322 P.2d 933].) ▆ The situation here is somewhat similar to that in the Gombos case. There the trial court sustained a demurrer to the third cause of action and entered a judgment of dismissal thereon. The case proceeded to trial on the first and second causes of action and the plaintiffs recovered judgment thereon. That judgment was satisfied of record. The defendant then moved for a dismissal of the appeal filed from the judgment of dismissal on the ground that such judgment was not a final one.[3] After pointing out that, as here, the action was attempted to be disposed of piecemeal, "that a single object, although stated in several counts, was sought to be attained by the action, and that this single and unseverable object was arbitrarily attempted to be split up as the basis for two distinct judgments" (p. 521), the court held that the judgment on the first two causes of action was not a final judgment and therefore not appealable. So here, the judgments on the verdicts did not purport to embrace a final disposition of the entire cause. By express terms they were confined to only the first counts, and erroneously failed to include a recital with reference to the disposition of the second, third and fourth counts. In the Gombos case this court held that the appeal from the judgment on the third cause of action was premature, said judgment not being a final one, and that the judgment of dismissal on the first two counts was not a complete judgment because it did not, as it should have done, dispose of the third count. We then pointed out that the appellants were entitled to a determination by the appellate court of the validity of the judgment on the third count and that this could be accomplished by dismissing the appeal with instructions to the trial court to amend the interlocutory judgment on the first two causes of action by including a disposition of the third cause of action. Then the appellants could appeal from the portion of the amended judgment disposing of the third cause of action. That would have required rebriefing of the very points that had already been briefed. Therefore, in the interests of justice, we ordered the judgment to be amended by adding a dismissal of the third cause of action. We then

---

[3]In *Costa* v. *Regents of University of Calif.,* 103 Cal.App.2d 491 [229 P.2d 867], it was held that a minute order granting a nonsuit is in itself a judgment of dismissal and ordinarily as such is an appealable order.

treated the notice of appeal from the premature judgment of dismissal as a notice of appeal from the judgment as amended. So here, while we could order the trial court to make the necessary amendment to the last judgments as entered, such a method would require rebriefing of all the points now fully briefed. As all the pertinent documents are before this court, and in the interests of justice and to prevent unnecessary delay, we order that the judgments of August 3, 1956, be and they are amended by adding thereto a paragraph dismissing the second, third and fourth causes of action based upon the orders granting nonsuits thereto.

This having been accomplished, the notice of appeal filed September 20 may be properly treated as a notice of appeal from the judgments as thus amended, and we do so treat it. This brings us to the appeal on the merits.

2. ADMISSION AND EXCLUSION OF EVIDENCE.

Plaintiffs make no claim that the evidence does not support the verdicts against them. Their only contention for reversal on the first cause of action is that the court erred in the admission and exclusion of certain evidence.

*The Fire Control Agreement.*

■ The court over objection admitted a contract between defendant county and the State Division of Forestry, which provided that the State Forest Ranger should have charge of the work of fire prevention and suppression in certain areas of the county, which included the dump site. It also provided for fire stations, lookouts, personnel, facilities and equipment. The court informed the jury at some length that the contract was not admitted for the purpose of relieving the county from any obligation but merely for the purpose of showing what the county did in regard to the dump to suppress fire and to prevent the creation of fire, and "If . . . it be contended," as it was, "that nothing was done to meet that obligation, then it becomes material to see what the county did . . . Whether that is sufficient or not is for you to determine. . . ."

Certainly the contract could not have been admissible to show that the defendant had either delegated its responsibility or was not the one primarily responsible for fire hazards in the dump. Assuming a duty, the foregoing would follow from the rule that a municipality is liable for the negligence or wrongful act of an employed independent contractor where the particular property or operation remains under the con-

trol of the municipality, where there is a positive duty imposed by law upon the municipality of such character that it cannot be delegated, or where the operations or work being performed are inherently dangerous. (See 18 McQuillin, Municipal Corporations (3d ed.) § 53.76, pp. 343-352; *Mulder* v. *City of Los Angeles* (1930), 110 Cal.App. 663, 668 [294 P. 485]: "The city was not authorized to abdicate its powers or surrender to a private person its duty to exercise proper supervision of the work which it permitted to be done.") But the contract was not admitted for that purpose and the jury was admonished in that regard.

The contract was admitted "only and solely for the purpose of showing what it did, not that that was sufficient nor that that is what it should have done, but it is only a circumstance indicating the actual situation from which you may draw the proper conclusion from the evidence and the law." This seems proper. For example, it showed that fire-fighting equipment and personnel were made available for the dump, in contrast to the evidence that the dump had no real fire-fighting equipment except an ax and a shovel.

The contract was admissible on cross-examination to bring out all the circumstances bearing on fire-fighting equipment available to the dump. ■ A cross-examiner may bring out all the facts within the knowledge of a witness involving things testified to on direct and which are material to a thorough understanding of the testimony, or to elicit any matter which may tend to overcome, qualify or explain the direct testimony. (*People* v. *Dotson* (1956), 46 Cal.2d 891, 898 [299 P.2d 875]; *People* v. *Whitehead* (1952), 113 Cal.App.2d 43, 50 [247 P.2d 717].)

The court properly admitted the agreement for the limited purpose expressed by it.

*The Official Fire Report.*

■ One of the duties of the Fire Ranger following a fire was to investigate and make an official report concerning its cause. The court refused to admit the official report made by the ranger of his investigation of the fire in question. Admittedly he was not present at the fire. The report was based primarily upon statements made to him by other persons. Plaintiffs contend that the report was admissible under section 1920, Code of Civil Procedure, "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or by another person in the

performance of a duty specially enjoined by law, are prima facie evidence of the facts stated therein,'' or under the Uniform Business Records as Evidence Act, sections 1953e-1953h, Code of Civil Procedure. █ The report is of a similar type to an accident report made by police officers, concerning which the court in *Hoel* v. *City of Los Angeles* (1955), 136 Cal.App.2d 295, 309-310 [288 P.2d 989], said: ''Not all official reports and not all business records are made competent by the cited sections of the code. Essentially accident reports, especially those compiled by police at the scene of an accident —based on statements of participants, bystanders, measurements, deductions and conclusions of their own — fail to qualify as admissible official records or business records. (See *Needle* v. *New York Rys. Corp.*, 227 App.Div. 276 [237 N.Y.S. 547, 549] ; *Johnson* v. *Lutz*, 253 N.Y. 124 [170 N.E. 517, 518].) That accident reports are not admissible under statutes such as our Uniform Business Records as Evidence Act (Code Civ. Proc., §§ 1953e-1953h) was held in *Palmer* v. *Hoffman*, 318 U.S. 109 [63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719]. █ In *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386, 392 [223 P.2d 862, 21 A.L.R.2d 1206], this court said: 'The statute does not change the rules of competency or relevancy with respect to recorded facts. It does not make that proof which is not proof. It merely provides a method of proof of an *admissible* ''act, condition or event.'' It does not make the record admissible when oral testimony of the same facts would be inadmissible.' This language was repeated in *Reisman* v. *Los Angeles City Sch. Dist.*, 123 Cal.App.2d 493, 506 [267 P.2d 36], in holding that certain reports prepared by public officials were inadmissible under section 1953f; and this was followed by application of the same principle to so-called public records.''

In *Harrigan* v. *Chaperon*, 118 Cal.App.2d 167, 168 [257 P. 2d 716], a report of a city fire inspector who was not present at the fire stating the cause of the fire was admitted in evidence without objection. It was the only purported evidence of the cause of the fire. The reviewing court held that as it was based entirely upon hearsay and therefore that section 1920, Code of Civil Procedure, was not applicable, it could not be considered evidence to support the court's finding of the cause of the fire.

█ Here, had the fire ranger been testifying orally, his testimony, being based entirely upon hearsay, would not have

been admissible.[4] Merely placing the same material in a written report could not replace the rules of evidence. The above mentioned code sections could never have been intended to apply to reports based entirely upon hearsay.

The court acted properly in excluding the report.

3. THE NONSUITS.

The second counts alleged that defendant county so negligently operated at the dump a motor vehicle, a self-propelled loader, as to ignite a fire in the dump which spread to plaintiffs' properties and caused the damage complained of. Section 400, Vehicle Code, provides that a county is responsible to every person who sustains damage by injury to person or property "as the result of the negligent operation of any said motor vehicle by an . . . employee . . . when acting within the scope of his . . . employment . . ."

About 1 p. m. July 29, 1954, fire broke out in the rubbish dump owned, maintained and operated in the Santa Cruz mountains by defendant county. The general area is forested, in which there is grass and weed cover. The State Division of Forestry classifies the area as a Number One Fire Zone. In the opinion of the Chief Ranger it is not a safe place for the operation of an open rubbish disposal dump. The day of the fire was a high fire hazard one. The dump had two terraces, the upper being used by local garbage collectors and the lower by defendant and the public for disposal of all kinds of material. The dumped material was thrown on top of the ground or over the bank. The material included wet garbage, brush, rags, bottles, cardboard, paper, shingles, wood and tree trimmings. Some of these materials created sources of ignition (bottles acting as magnifying glass) within the dump itself. Brush grew within the dump area itself and within 35 to 40 feet of a pile of brush and tree trimmings considered by one witness to be the place of origin of the fire. Prior to this fire there had been numerous fires in the dump, one of which almost escaped beyond the dump's confines. Fire in the dump was never actually out; the materials were smoldering almost constantly.

The pile of brush and tree trimmings deposited at the westerly end of the lower terrace of the dump projected onto the terrace. The caretaker had requested the defendant's road foreman in the area to send up a piece of equipment to push

---

[4]We are not dealing with expert testimony based upon assumed questions of fact. Such testimony of the Chief Ranger was admitted.

this material and other debris over the bank. In compliance with this request a county employee came to the dump with a scoopmobile to do the work. A scoopmobile or skiploader is a three-wheeled motor vehicle with two drive wheels in front and a steering wheel in the rear. It had a bucket on an arm which operated in front of the vehicle to pick up and drop materials and was equipped with rubber pneumatic tires. The front axle had a differential so that one of the drive wheels might spin while the other remained stationary. It was not equipped with a spark arrester but it had a muffler, which is considered a sort of arrester. The soil at the dump was sandy and a vehicle of this type is not a proper one for operation in that type of soil because of the risk of its getting stuck in the soil.

On the day in question, the scoopmobile went over the bank and became stuck as it was carrying brush off the terrace into the dump proper. Its front wheels were over the bank and resting upon brush and tree limbs, about four feet below the edge of the terrace, and its rear wheel was up on the bank, with its muffler and exhaust near the surface of the edge of the terrace. At the time the fire broke out the operator was engaged in attempting to extricate it which caused its wheels to spin. The burned out vehicle was found in the same position after the fire.

About 12:45 p. m. Ryder, a county employee, drove the scoopmobile to the dump and began working it there. While he was working Thompson, not a county employee, drove a pickup truck to the dump and unloaded it. He saw the scoopmobile working. He saw smoke but no fire between him and a station wagon and trailer. The scoopmobile was beyond them. Thompson was there about 10 minutes and left. He deemed the smoke as of no significance as there was usually smoke at the dump. Meyers, the county caretaker, testified that about the time that the scoopmobile got stuck he observed a small fire about 150 feet east of the scoopmobile. About the same time a high wind arose. Ryder tried to put the fire out with sand, Ryder, Meyers and Ericksen, also a county employee, tried to get the scoopmobile out. The fire jumped the road and hit a pine tree outside of the dump. The scoopmobile burned after the pine tree burned. Ericksen, who went down with his truck to pull the scoopmobile out, saw smoke. It was distant from the scoopmobile. Meyers left to get a heavier truck. As he did so he saw flames still distant

from the scoopmobile. When he returned the fire was all over the dump and outside it but the scoopmobile was not burning. When Ryder drove into the dump with the scoopmobile he saw smoke or dust. About the time the scoopmobile got stuck the fire started at about the place where he first saw smoke. It spread from there towards the scoopmobile. After trying to put the fire out with sand, he put a log under the wheel of the scoopmobile and tried to get it out. Ericksen left with Meyers. The fire was small and still well away from the scoopmobile. Meyers returned with a neighbor, Clingan. Ryder was working desperately trying to keep the fire away from the brush by shoveling sand on it. Meyer sent Clingan to call the Division of Forestry. As he drove past the scoopmobile, it was not then on fire. The fire was in the center of the dump. The scoopmobile was in a corner of the dump.

After the fire it was noted that the burned out area in the dump fanned out in a southerly direction from the apex of the fan at the corner of the dump. The scoopmobile was in this area. At the start of the fire the wind was blowing out of the north. Normally, the point of origin of a fire is at the apex of the burned out area. It was also found that the left front wheel of the scoopmobile rested on a partially burned log approximately 8 to 12 inches in diameter, having a rounded-out depression at its point of contact with the wheel.

The cause of the ignition of the fire was not known but all of the eyewitnesses to it placed the location of its origin between 75 and 150 feet east of the scoopmobile. Defendant attributed the escape of the fire beyond the dump and established fire breaks to alleged phenomenal weather conditions which it claimed were unforeseeable.

To oppose this eyewitness testimony plaintiffs rely upon the expert testimony given by the Chief Ranger for the Division of Forestry. He testified that he had supervised and participated in the investigation of the source of ignition, discussed it with his assistant, and visited the dump after the fire had been brought under control, probably again the next day, and again several days after the discussion with his assistant. The Chief Ranger said that there was no physical evidence from which he could determine the origin of the fire. He was not asked any hypothetical questions based upon the testimony in the case. He was asked his opinion as to the possible sources of ignition of the fire. He stated: "There

were two possible sources of ignition at the area of the skiploader, *assuming that the fire started at the skiploader . . .*" (Emphasis added.)   One source was that "there *could have been* oil rags, wet garbage, something of that nature, that caused spontaneous ignition . . ."   (Emphasis added.)   The other was that he found a log approximately underneath the left front wheel that had a rounded depression in it "that led me to believe that the tire *could possibly have skidded* on that log at some time prior to the fire, so the only opinion I had left out of the elimination of the four [this refers to three other possible sources he had mentioned before] was undoubtedly it could have started from the left front wheel skidding on that log."   On cross-examination he stated that the fact that after the fire was over the log appeared scorched "doesn't necessarily mean that friction caused this fire . . ."   He was then asked: ". . . in respect to the causes which you gave at the skiploader, your conclusion was based solely on the assumption that the fire started at the skiploader, was it not?"   He replied, "That's right."   He said that *if* the fire started at the skiploader then in his opinion there were two possible sources of the fire, (1) friction of the skiploader, or (2) spontaneous combustion.

As said in *George* v. *Bekins Van & Storage Co.* (1949), 33 Cal.2d 834 [205 P.2d 1037], "Ordinarily an expert must base his opinion either on facts personally observed or on hypotheses that find support in the evidence."   (P. 844.)   The Chief Ranger stated that from his own observations he could not state how the fire started, and his assumption that the fire started from the action of the skiploader was based solely upon the assumption that the fire started at that machine.   Such assumption was not based on any evidence and in fact was contrary to the evidence.   As said in *Estate of Powers* (1947), 81 Cal.App.2d 480, 485-486 [184 P.2d 319], if the expert's opinion is not based upon facts otherwise proved, or assumes facts contrary to the only proof, it cannot rise to the dignity of substantial evidence."   As in *Nielsen* v. *Industrial Acc. Com.* (1932), 125 Cal.App. 210 [13 P.2d 517], there is "no true conflict in the evidence where that on one side consisted of opinions based upon a state of facts not shown by the record to exist while that on the other side was based upon facts actually shown to exist . . ."   (P. 212; see also *Alaska Packers Assn.* v. *Industrial Acc. Com.* (1934), 1 Cal.2d 250, 263 [34 P.2d 716].)   "It has long been the

rule in this state that a nonsuit may be granted only when, disregarding conflicting evidence, giving to the plaintiff's evidence, all the value to which it is legally entitled, and indulging in every legitimate inference which may be drawn from that evidence, the court properly determines that there is no substantial evidence to support a verdict in favor of the plaintiff. [Citations.] There is, however, a qualification on this broad general rule. It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law [Citation.] In these circumstances the inference is dispelled as a matter of law, and, if the fact inferred is necessary to establish an essential element of the plaintiff's case, a nonsuit or directed verdict is proper. [Citations.]'' (*Leonard* v. *Watsonville Community Hospital* (1956), 47 Cal.2d 509, 514-515 [305 P.2d 36].)

The granting of nonsuits on the second counts was proper.

*Third and Fourth Counts. Nuisance.*

As pointed out by the trial court, the third counts did not state causes of action for nuisance as there are no allegations of nuisance in it. They merely allege that the fire was caused by negligence in the maintenance of the dump and in the operation of the scoopmobile. Therefore, the nonsuit on the ground that the counts did not allege nuisance was properly granted. Plaintiffs followed the suggestion of the court and filed fourth counts in which nuisance is properly alleged. While perhaps these counts allege too much in that they incorporate the allegations of the second counts, they do allege that the defendant maintained the dump in such manner as to be injurious to, and cause an obstruction to the free use of the plaintiffs' property and so as to interfere with the comfortable enjoyment of life and property.

Defendant's first contention is that inasmuch as the maintenance and operation of a refuse disposal dump by the county is a governmental function maintained under authority of the statute[5] ''Nothing which is done or maintained

---

[5]Section 25820, Government Code, provides that the board of supervisors of a county may acquire, maintain and operate dump sites and other disposal plants for the disposal of combustible or noncombustible garbage or rubbish or both.

under the express authority of a statute can be deemed a nuisance." (Civ. Code, § 3482.) In *Ambrosini* v. *Alisal Sanitary Dist.*, 154 Cal.App.2d 720, 727 [317 P.2d 33], it was held that that code section is not applicable to a defectively constructed sewer outfall line. ▮ The rule in California is that a public agency or municipality may be liable for the maintenance of a nuisance even though it is exercising a governmental function in the activity at issue, and any person whose property is affected or whose personal enjoyment is lessened by a nuisance may maintain an action for damages. (*Phillips* v. *City of Pasadena*, 27 Cal.2d 104, 106 [162 P.2d 625].) In *Hassell* v. *City & County of San Francisco*, 11 Cal. 2d 168, 171 [78 P.2d 1021], it is stated that authority given a municipality by charter to have exclusive control and management of parks, including the right to erect and superintend the erection of buildings therein, does not give it the right to exercise the power in such a manner as to create a nuisance.

▮ The fourth counts of the complaints, therefore, pleaded causes of action.

*Moot?*

▮ Defendant contends that the finding of the jury on the first causes of action makes the fourth causes moot. We agree with that contention. The first counts charge, under the Public Liability Act, a dangerous and defective condition due to the accumulation of inflammable material, the habitual burning of brush at all hours of the day and night, failure to extinguish such smoldering and burning brush. The jury found against plaintiffs on this issue.

A dangerous or defective condition of the dump itself is a necessary part of the nuisance charge. Without it there could be no nuisance. To determine that would be the retrial of a matter of which the jury has already judged.

Moreover, all the acts specified in plaintiffs' fourth causes of action are identical with those specified in the first causes of action as grounds for the application of the Public Liability Act. Speaking of the liability of a municipality exercising a governmental function being limited to injuries resulting from the dangerous or defective condition of grounds, works and property, the court in *Pittam* v. *City of Riverside* (1932), 128 Cal.App. 57, 62 [16 P.2d 768], said: "Under the pleadings and facts of the instant case the liability of the municipality in the exercise of a governmental function is limited to 'injuries to persons and property resulting from

the dangerous or defective condition of public . . . grounds, works and property.' Knowingly maintaining public property in such a condition that it is dangerous to the life, limb, health or safety of the person or property of another, or the operation of municipal works upon its own property in accordance with a general scheme put in effect by municipal authorities, in such a manner that like dangers would exist, is a form of negligence. This is the doing of something in a manner in which an ordinarily prudent person would not do it." (See also *George* v. *City of Los Angeles* (1938), 11 Cal.2d 303 [79 P.2d 723], which states: "This liability is one for negligence." (P. 308).)

Plaintiffs cite several cases, among them *Owen* v. *City of Los Angeles* (1947), 82 Cal.App.2d 933 [187 P.2d 860], *Pittam* v. *City of Riverside, supra,* 128 Cal.App. 57, 67, and *Wilkerson* v. *City of El Monte* (1936), 17 Cal.App.2d 615, 624 [62 P.2d 790], to the effect that it is error in a Public Liability Act case to instruct on the subject of general negligence. However, none of these cases hold that the liability under that act is not one for negligence. The reason that it would be improper in a Public Liability Act case to instruct on negligence, as such, is that thereby a jury might be led into predicating liability on an agent's negligence, without more. Negligence may exist independent of a dangerous and defective condition of public property, but such a condition may not exist without negligence. Under both the first and fourth counts, knowledge, actual or constructive, must be proved, not merely knowledge that a garbage dump was being maintained but that it was negligently maintained. Plaintiffs contend that the jury's verdict on the first counts did not necessarily mean that the jury found that there was no dangerous or defective condition negligently maintained but that the jury might have based its verdict on a finding of lack of knowledge by defendant, pointing out that ordinarily the question of knowledge, express or implied, is a question for the jury. (See *Bady* v. *Detwiler* (1954), 127 Cal.App.2d 321, 335 [273 P.2d 941]; *Murphy* v. *County of Lake* (1951), 106 Cal. App.2d 61, 67 [234 P.2d 712].) ▮ A general verdict imports a finding in favor of the winning party on all the averments of his pleading material to his recovery. It was so held in *Tremble* v. *Tuman* (1917), 175 Cal. 696, 698 [167 P. 142], where it was contended that there was an inconsistency between the jury's findings on special interrogatories and the general verdict. To the same effect is *Price* v. *Bekins Van &*

*Storage Co.* (1918), 179 Cal. 326, 328 [176 P. 452]. There the plaintiff sued on two counts, one for false representations, the other for conversion. The jury found for plaintiff on both counts. On appeal it was held that certain evidence was erroneously admitted, but that there was ample evidence free from error to support the first cause of action. The court then said that ''A general verdict for plaintiff imports a finding in his favor on all the averments of the complaint material to his recovery'' (p. 328) and that therefore it was immaterial whether or not the evidence relative to the issues in the second count was erroneously admitted. (See also *Shields* v. *Oxnard Harbor Dist.* (1941), 46 Cal.App.2d 477, 491 [116 P.2d 121].) In *Hudgins* v. *Standard Oil Co.* (1933), 136 Cal. App. 44, 50 [28 P.2d 433], where the reviewing court reversed the action of the trial court in setting aside general verdicts in favor of the plaintiffs because of alleged inconsistency between them and the special verdicts, the court said: ''It is unnecessary to cite the cases holding that all intendments are in favor of the general verdicts, and that everything necessary to be found by the jury, not otherwise controverted, will be deemed found and included therein.'' ▮ In *Hassell* v. *San Francisco, supra,* 11 Cal.2d 168, 171, the court said: '' 'A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.' (46 Cor.Jur. p. 674.) '' ▮ Under that rule the grant of power to the county to maintain and operate a refuse dump including the burning of refuse thereon, protects the county from liability for the ordinary operation of the dump. Necessarily implied in the grant of power under section 25820 is the right to operate the dump in the usual and customary manner in which similar dumps are operated. However, a dump may not be operated in a negligent manner nor in such manner as to constitute a nuisance. (See *Ambrosini* v. *Alisal Sanitary Dist., supra,* 154 Cal.App. 2d 720, 726; 63 C.J.S. pp. 69-70.) But in this case there is a jury finding that the dump was not operated in a negligent manner (the only basis for nuisance charged) and that the acts upon which plaintiffs base their claim of nuisance did not

occur. The finding of the jury on the factual issues under the first causes of action is determinative of the same issues under the fourth causes even though different legal conclusions might be drawn had the jury found the other way upon them.

Under the pleadings, the evidence and the findings of the jury in this case, the charges in the fourth causes became moot.

The judgments on all counts are affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 7, 1959. Peters, J., did not participate therein.