[Civ. No. 7117. Fourth Dist. Oct. 15, 1963.]

ELIZABETH B. JOHNSON, Plaintiff and Appellant, v. AETNA LIFE INSURANCE COMPANY, Defendant and Respondent.

A. J. Blackman and Edward M. Ross for Plaintiff and Appellant.

Swing, Swing & Fisher and Everett H. Swing for Defendant and Respondent.

COUGHLIN, J.—This is an action to recover under the double indemnity provisions of a life insurance policy issued by the defendant insurance company, respondent herein, insuring a man named Wilson, since deceased, and designating the latter's wife as beneficiary, who assigned her claim thereunder to the plaintiff appellant herein. ▮ Pertinent provisions of the policy declare: "If the death of the insured ... results, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, ... and if such injuries are evidenced by a visible contusion or wound on the exterior of the body ..., and if, ... such death does not result from any one or more of the excepted causes ... then, immediately upon receipt of

due proof thereof, the Company will pay Five thousand Dollars ($5000.), in addition to the insurance payable under this policy for natural death.

"This provision does not apply to death of the insured
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
" (b) Resulting directly or indirectly, wholly or partly, from bodily or mental infirmity ... or any other kind of disease, even though the proximate or precipitating cause of death is accidental bodily injury."

The plaintiff contends, in substance, that the insured's death resulted from a chain of events set in operation by an injury to his left ankle, sustained through violent, external and accidental means; that the injury so sustained was evidenced by a visible contusion; that coincidental injury to an artery, subject to preexisting arteriosclerosis, resulted in a blood clot which caused a complete occlusion thereof and the onset of gangrene; that the leg was amputated; and that, prior to amputation, the clotting spread to the adjacent venous system, which was the source of a pulmonary embolism that caused death.

The defendant contends that the insured's death resulted from preexisting bodily infirmity and disease; that he had arteriosclerosis of the arteries in the leg and heart; that the condition of the insured's ankle, including the blood clot, occlusion of the artery and resultant gangrene was caused by the existing arteriosclerosis in the affected artery; that the insured's ankle was not injured through external, violent and accidental means; that the alleged immediate cause of death as related in the death certificate, was "pulmonary infarction" due to "arteriosclerotic cardiovascular disease"; and that, as testified to by the attending physician, death "was due to number one, pneumonia, number two, quite severe congestive heart failure which was the result of a longstanding heart disease and generalized arteriosclerosis and, number three, to the infarct he had in his left lower lobe of his left lung."

The insured, at the time of his death, was 63 years of age; had a diseased heart condition of long standing; previously had a serious "heart attack"; and also had arteriosclerosis in advanced stages.[1]

---

[1]An autopsy upon the deceased insured showed the following: "ANATOMIC DIAGNOSIS: Severe coronary sclerosis with Atheromatous occlusion of the descending branch of the left coronary artery. Healing myocardial infarction. Recent surgical amputation of the left leg above

After a trial by jury, judgment was entered upon a verdict in favor of the defendant. ■ Plaintiff appeals; contends (1) that the trial court erred in sustaining objections to the admission of statements in the hospital records that the insured slipped and fell on January 19, 1959, i.e., the date of the alleged accident, and that almost immediately thereafter his left foot turned blue and then black; and also contends (2) that the trial court erred in giving instructions proposed by the defendant with respect to the effect of pre-existing disease upon recovery under the double indemnity provisions of the policy. In reply, the defendant contends (1) that admission of the hospital record statement properly was denied; (2) that the instructions in question were proper; and (3) that, in any event, no prejudice occurred from giving them because, under the evidence, the defendant was entitled to a verdict as a matter of law.

## RE HOSPITAL STATEMENTS

The statements in the hospital records that the insured slipped and fell, followed by discoloration of his foot, as stated in the plaintiff's brief, "were offered not as proof of the facts recited therein, but for the purpose only of showing what information the doctors had in coming to the diagnosis appearing in the records." The only pertinent diagnosis therein is the conclusion that the insured's leg was gangrenous and should be amputated. The consulting surgeon, upon whose testimony the plaintiff relied to furnish a foundation for admission of the subject statements, testified that he was not concerned with the cause of the gangrene; had no recollection whether he read any of the patient's history appearing in the hospital records, including the statements in question; and did not need to refer to that history as a basis for his determination that amputation was necessary. It is apparent that the existence of gangrene was evident, and

the knee for arteriosclerotic gangrene (C/406/59). Mural thrombi in the left ventricle. Myocardial fibrosis. Marked hypertrophy of the heart. Marked dilation of the cardiac chambers. Adenocarcinoma of the prostate gland. Pulmonary edema, bilateral. Marked pulmonary congestion of the left lower lobe. Infarcts in the left lower pulmonary lobe. Bilateral pulmonary emphysema. Pulmonary sclerosis (chronic pneumonitis). Bilateral pleural effusion (right 400 cc., left 300 cc.). Passive congestion of the liver, spleen, and kidneys. Stasis catarrh of the small intestine. Severe atherosclerosis of the aorta with mural thrombi.''

The hospital's summary record indicated that the resident doctor's final diagnosis was: Gangrene due "to arterial insufficiency; Myocardial infarct; Pulmonary infarction; Arteriosclerotic heart disease."

that its cause was wholly immaterial to any determination respecting the need for amputation.

Statements made by a patient to his surgeon respecting the cause of an injury, when declared by the latter to be necessary to enable him to form an opinion as to the nature of the injury, and constituting in part the basis for his conclusion respecting such, are admissible to show the basis for the surgeon's conclusion in the premises, but not for the purpose of establishing the truth of the facts contained therein. (*Willoughby* v. *Zylstra*, 5 Cal.App.2d 297, 300 [42 P.2d 685].)

The statements in the case at bar were irrelevant to the issue at hand; would not have been admissible if offered as a part of the testimony of the attending physician (*People* v. *Shattuck*, 109 Cal. 673, 678 [42 P. 315]; *Willoughby* v. *Zylstra, supra,* 5 Cal.App.2d 297, 300); were not made admissible merely by their inclusion in the hospital records (*Behr* v. *County of Santa Cruz*, 172 Cal.App.2d 697, 705 [342 P.2d 987]; *Shehtanian* v. *Kenny*, 156 Cal.App.2d 576, 581 [319 P.2d 699]; *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386, 392 [223 P.2d 862, 21 A.L.R.2d 1206]); and properly were excluded.

## ERROR RE INSTRUCTIONS

The court instructed the jury on the causal relationship between the insured's preexisting bodily infirmity or disease, the alleged injury effected through accidental means, and the plaintiff's right to recover under the double indemnity provisions of the policy. The controversy between the parties respecting these instructions concerns primarily the effect and applicability of the decision in *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305 [163 P.2d 689], where recovery was sought under an accident insurance policy which insured " 'against the results of bodily injuries ... caused directly and independently of all other causes by violent and accidental means,' " and further provided that it did not " 'cover accident, injury, disability, death or any other loss caused *wholly or partly, directly or indirectly,* by disease or mental infirmity or medical or surgical treatment therefor.' " (Italics ours.) With one exception hereinafter noted, there is substantial identity between the quoted provisions of the policy under consideration in the aforesaid case and the double indemnity provisions of the instant policy. In the *Brooks* case (*Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305), it appeared "that the insured was suffering

from an incurable cancer and was under the influence of narcotics given to relieve pain, and that by reason of his weakened and infirm condition he may have been less able than a normal person to withstand the effect of the injuries'' which he received in a fire of accidental origin; the defendant insurance company contended that the evidence failed to show that the insured's death ''was not caused 'wholly or partly, directly or indirectly, by disease or mental infirmity' ''; and the court rejected this contention, stating that ''the presence of pre-existing disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.'' Subsequently, in an action to recover under the double indemnity provisions of a life insurance policy containing similar coverage and exclusionary clauses, instructions based upon the principle thus adopted were approved. (*Happoldt* v. *Guardian Life Ins. Co.*, 90 Cal. App.2d 386, 390, 396-400 [293 P.2d 55].) Thereafter, the Supreme Court alternately phrased and epitomized the rule as follows: ''Otherwise stated, the insurer is liable although death is caused partly by a preexisting disease or infirmity and partly by an accident, if the accident is the prime or moving cause.'' (*Zuckerman* v. *Underwriters at Lloyd's, London*, 42 Cal.2d 460, 468 [267 P.2d 777].)

The plaintiff claims that five of the instructions given by the trial court at the request of the defendant did not follow the law as stated in *Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305; conflicted with instructions based thereon given by the court at her request; and were prejudicially erroneous.

██ Two of these instructions concerned the burden of proof; incorporated in part the phraseology used in the subject policy; and declared that the plaintiff was required to prove that the insured's death resulted from ''injuries effected solely through external, violent and accidental means.'' The plaintiff directs attention to the use therein of the term ''solely,'' and contends that the jury thereby was instructed that the plaintiff was required to prove that death resulted solely from accidental injuries. However, it appears without equivocation that the term ''solely,'' as used therein, refers to the type of injury causing death, i.e., injury

effected solely through external, violent and accidental means, rather than to the cause of death. The objection is without merit.

 The remaining three allegedly objectionable instructions are inter-related; are based upon the theory that the instant double indemnity provisions do not cover a death proximately caused by accidental injuries if also proximately caused by preexisting disease; and are in conflict with the plaintiff's concept of the applicable rule of law in the premises. The first of these instructions, using the order in which they were given, i.e., No. 33 (Defendant's No. 23),[2] advised the jury: "If you find from the preponderance of the evidence that the death of Mr. Wilson was caused or contributed to directly or indirectly either by pre-existing disease—that is to say, disease from which Mr. Wilson was already suffering at the time of the injury, if any, to his ankle, or that his death was caused directly or indirectly by medical or surgical treatment for any such preexisting disease, then I instruct you that your verdict must be in favor of the defendant even though the proximate or precipitating cause of his death may have been accidental bodily injury. In determining what is meant by the language 'caused or contributed to' and 'directly or indirectly,' you will consider all of the instructions and as a whole."

The second of these instructions, i.e., No. 41 (Defendant's No. 26) directed attention to certain issues which the plaintiff had the burden of proving, and then stated: "If, however, you find in favor of plaintiff on each of these issues, then you must next consider whether Wilson's death did or did not also proximately result from any one or more of the following excepted causes named in the policy of insurance, namely, bodily or mental infirmity, or any other kind of disease."

The third of these instructions, i.e., No. 53 (Defendant's No. 27), insofar as it is pertinent to the present inquiry, directed that: "... the additional indemnity provisions under which plaintiff seeks to recover here do not apply if such death is proximately caused by any one or more of

---

[2]The instructions quoted herein are those orally given by the court as recorded in the reporter's transcript which, in some instances, differ from their written counterparts contained in the clerk's transcript.

The trial court numbered the instructions in the order they were given and those referred to herein are identified by these numbers as well as by the numbers assigned to them by the defendant.

certain excepted causes, amongst which are bodily or mental infirmity, or any other kind of disease, or medical or surgical treatment of any kind of disease. The burden is upon the defendant in such case to prove by a preponderance of the evidence that notwithstanding the occurrence of such accidental bodily injury, if any, the insured's death was proximately caused by some one or more of such excepted causes.

"So in this case, if you find that at the time of such accidental bodily injury, if any, the insured, Mr. Wilson, was then afflicted with pre-existing disease from which he continuously suffered until his death, and that such pre-existing disease was itself a proximate cause of his death, or that Mr. Wilson received medical or surgical treatment for such pre-existing disease as distinguished from treatment, if any, for some accidental bodily injury, and that such medical or surgical treatment for such pre-existing disease proximately caused his death, then in either of such cases, plaintiff cannot recover, and defendant is entitled to your verdict.

"You will bear in mind the possibility that there can be more than one proximate cause of an occurrence such as death, and you will consider the foregoing instructions in the light of all of the instructions given you in this case, including the instructions defining the expression 'proximate cause' or 'proximate result.' "

It should be noted that the three foregoing instructions apply the theory of concurrent proximate cause of death.[3]

Three instructions given at the request of the plaintiff incorporated the announced principles adopted by the decision in *Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305; presented the law in conformity with the plaintiff's theory of the case; and, in the language of one thereof, advised the jury that if, before sustaining any injury, the insured "may have had a diseased physical condition," and "such injury acted upon such diseased condition so as to set in motion a chain of events which led to and proximately caused ... [his] ... death, ... your verdict must be in favor of the plaintiff...."

[3]Although instruction No. 33 uses the language "death ... caused or contributed to directly or indirectly ... by preexisting disease," in view of the specific direction therein to consider all of the instructions as a whole in determining the meaning of the terms "caused or contributed to" and "directly or indirectly," the subject instruction confined the causation issue to proximate cause, as clearly appears from a consideration of the instructions as a whole.

The plaintiff's objection to the defendant's instructions is based upon her concept respecting the effect of the rule adopted in the *Brooks* case (*Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305) ; upon her apparent belief that by virtue thereof a beneficiary may recover under a double indemnity agreement containing coverage and exclusionary provisions similar to those considered in that case where the insured's death was proximately caused by accidental injuries even though it also was proximately caused by preexisting disease; and upon her assumption that this rule applies to the facts in the case at bar.

 The rule adopted by the decision in *Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305, and subsequently applied in other California cases, is one of interpretation and causation; is applied to determine what situations are included within the provisions of a double indemnity clause covering death resulting directly and independently of every other cause, from bodily injuries effected through accidental means, but excluding death resulting directly or indirectly, wholly or partly, from bodily infirmity or disease; directs, in substance, that such provisions do not exclude death resulting from the effect of an accidental injury upon a preexisting disease; and authorizes double indemnity recovery where accidental injury is the motivating factor in a chain of causation, including its effect upon a preexisting disease, which results in death independently of other causes. The rule in question does not authorize such recovery where death is proximately caused by an accidental injury acting upon preexisting disease if, independently of that injury, it also is proximately caused by another preexisting disease.

The foregoing conclusions are in harmony with the decisions in other jurisdictions which have applied the rule adopted in *Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305. Those decisions are pertinent to a determination respecting the extent and effect of that rule; differentiate between a condition upon which a cause may act in effecting a result, and the cause itself; or, as stated in some of them, between a remote or predisposing cause and a proximate cause; hold, in substance, that preexisting disease participation as a condition, or as a remote or predisposing cause, in a series of events precipitated by accidental injury resulting in death, is not included within the realm of causation contemplated by the provisions of a double indemnity agreement excluding from coverage death resulting directly or indirect-

ly, wholly or partly, from bodily infirmity or disease; and limit their determination to the effect of an injury upon a preexisting disease as the sole proximate cause of death. (*Order of United Commercial Travelers* v. *Groves*, 130 F.2d 863, 865; *Scanlan* v. *Metropolitan Life Ins. Co.*, 93 F.2d 942, 945-946[4]; *Life & Casualty Ins. Co. of Tenn.* v. *Jones*, 230 Ark. 979 [328 S.W.2d 118, 122]; *Gennari* v. *Prudential Ins. Co. of America* (Mo.) 335 S.W.2d 55, 62; *Beimdiek* v. *New York Life Ins. Co.* (Mo.App.) 183 S.W.2d 379, 383; *Long* v. *Railway Mail Assn.*, 145 Neb. 623 [17 N.W.2d 675, 680]; *McGrail* v. *Equitable Life Assur. Soc.*, 292 N.Y. 419 [55 N.E.2d 483]; *United States Casualty Co.* v. *Thrush*, 21 Ohio App. 129 [152 N.E. 796, 797]; *Kelly* v. *Prudential Ins. Co. of America*, 334 Pa. 143 [6 A.2d 55, 58-59][4]; *Foulkrod* v. *Standard Acc. Ins. Co.*, 343 Pa. 505 [23 A.2d 430, 433]; *Pierce* v. *Pacific Mut. Life Ins. Co. of California*, 7 Wn.2d 151 [109 P.2d 322, 327].)

The allegedly objectionable instructions in the case at bar did not foreclose a finding that Mr. Wilson's preexisting disease was a condition, or a remote or predisposing cause, rather than the proximate cause of his death; instead, when considered in the light of the whole charge, instructed the jury that there may have been two proximate causes of death; permitted the jury to find that a preexisting disease was one of those causes and an accidental injury the other; and directed a verdict for the defendant, with respect to the issue at hand, only in the event that a preexisting disease was found to be a proximate cause of death.

There was substantial evidence from which the jury could have concluded that the immediate cause of death in the instant case was pneumonia which, in turn, was proximately and concurrently caused by a heart failure wholly unrelated to the alleged leg injury, and due entirely to a preexisting heart disease, and also by a pulmonary occlusion which, as contended by the plaintiff, was attributable to a veneous clotting which followed a chain of causative events precipitated by an alleged accident. The heart disease in question was two-fold; consisted of (1) an "atheromatous occlusion of the descending branch of the left coronary artery" which was a condition involving several years of development, and (2) a "healing myocardial infarction" which followed a heart at-

[4]These cases were cited in the opinion in *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305 [163 P.2d 689].

tack that had preceded the alleged leg injury. A part of the treatment being administered to the insured during his stay in the hospital was for the heart failure caused by this pre-existing heart condition.

The instructions to which the plaintiff objects presented a theory permissible under the rule applicable to and support-ed by the foregoing evidence. No error occurred in giving them.

Furthermore, the double indemnity agreement in the in-stant case differs from that considered in *Brooks* v. *Metro-politan Life Ins. Co., supra,* 27 Cal.2d 305; contains not only the usual provisions excluding death "resulting directly or indirectly, wholly or partly," from bodily infirmity or dis-ease, which were the provisions considered in the latter case, and in other cases applying the rule therein adopted, but also the clause, which follows these provisions, that "even though the proximate or precipitating cause of death is accidental bodily injury"; thus, purports to extend the area of ex-clusion beyond that fixed by the exclusionary provisions con-tained in policies similar to that under consideration in the *Brooks* case (*Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305); appears to have been drafted to foreclose an interpretation thereof which would eliminate the effect of bodily infirmity or disease on the right to recover in those instances where the proximate or precipitating cause of death was accidental bodily injury; and, in any event, would ex-clude from coverage for double indemnity purposes a death proximately caused by preexisting disease as well as by acci-dental injury.

An insurance company may limit its contractual lia-bility by any appropriate provision not prohibited by public policy or statute (*Linnastruth* v. *Mutual Benefit etc. Assn.,* 22 Cal.2d 216, 219 [137 P.2d 833]) ; and where the provisions of its policy "are definite and certain there is no room for interpretation and the courts will not indulge in a forced construction in order to cast a liability upon the insurer which it has not assumed." (*National Auto. Ins. Co.* v. *In-dustrial Acc. Com.,* 11 Cal.2d 689, 691 [81 P.2d 926].)

The clause in the instant policy which differentiates its double indemnity exclusionary provisions from those con-sidered in *Brooks* v. *Metropolitan Life Ins. Co., supra,* 27 Cal.2d 305, i.e., "even though the proximate or precipitating cause of death is accidental bodily injury," as applied to the case at bar, does not violate public policy or statute; is clear and unambiguous; and may not be disregarded.

The defendant relies in part upon the extended exclu-

sionary limitations contained in its policy as authority for its position that the instructions to which the plaintiff objects properly were given. This contention is well taken.

In view of our conclusion that no error occurred in giving the instructions requested by the defendant, we need not consider its further contention that the evidence is insufficient as a matter of law to support a finding that any injury which the insured may have received was effected through external, violent and accidental means.

The judgment is affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.