[Civ. No. 17593. Second Dist., Div. Three. Nov. 13, 1950.]

ELIJAH McGOWAN, Respondent, v. CITY OF LOS ANGELES, Appellant.

[Civ. No. 17594. Second Dist., Div. Three. Nov. 13, 1950.]

CLEVEN McFADDEN, Respondent, v. CITY OF LOS ANGELES, Appellant.

[Civ. No. 17595. Second Dist., Div. Three. Nov. 13, 1950.]

JESSIE ESTES, Respondent, v. CITY OF LOS ANGELES Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Àssistant City Attorney, and Edwin F. Shinn, Deputy City Attorney, for Appellants.

Raoul D. Magana for Respondents.

VALLÉE, J.—These are three appeals by defendant from judgments for plaintiffs. The McGowan and Estes actions are for damages for personal injuries. The McFadden action is for damages for wrongful death. The actions were tried together. We state the facts in the light most favorable to plaintiffs-respondents.

On July 27, 1947, plaintiffs McGowan and Estes, and Cleven McFadden, Jr., deceased son of plaintiff Cleven McFadden, together with Wirth Tyree and John Anderson, were passengers in an automobile driven by Charles Cox. The accident occurred in the intersection of Colorado Street and Lincoln Boulevard in Santa Monica. Cox and McFadden were killed instantly. The other four passengers were injured.

Colorado Street, 54 feet wide, runs east and west. Lincoln Boulevard, 60 feet wide, runs north and south. They intersect at right angles. Traffic at the intersection is controlled by a flasher signal which blinks red for Colorado Street traffic and yellow for Lincoln Boulevard traffic. Cox was driving east on Colorado Street. He was required to bring his car to a complete stop before entering the intersection. (Veh. Code, § 477(1).) The police car was being driven north on Lincoln Boulevard. It was not on an emergency trip and had no red light. It could only proceed past the signal and through the intersection "with caution." (Veh. Code, § 477(2).)

Cox brought his car to a complete stop at the intersection. He waited four or five seconds for a large northbound transport truck to pass in front of him and then started into the intersection. In the southeast quarter of the intersection the front end of the police car, traveling between 45 and 60 miles an hour, without sounding a siren, struck the right side of the Cox car. The police car hurled the Cox car some 60 feet, knocked down a steel street sign, turned over on its side, sheared off a fire hydrant, and uprooted a thick, heavy bush. As it was traveling to Colorado Street, the police car had gone through four or five intersections controlled by similar traffic signals at a speed between 45 and 60 miles an hour.

At the trial defendant claimed that Cox was intoxicated at the time of the accident. A toxicologist, employed in the county coroner's office in charge of the examination of blood of deceased persons and the records thereof, testified that a paper entitled "Blood alcohol determination" was made, and the blood referred to was received and analyzed, by his department in the regular course of business. He also testified that the death of only one Charles Cox was recorded on July 27, 1947; the record indicated that the blood that was examined came from Mashmeyer's Mortuary in an 8-ounce "blood jar"; the coroner's office supplies 8-ounce blood bottles to mortuaries; the bottle was labeled "Charles Cox 7-27-47, 4:15 A. M., Boggs & Mashmeyer's Wilshire Funeral Home.

Krieger. Mashmeyer. Alcohol.''; and the analysis is noted on the paper. An assistant toxicologist employed in the county coroner's office testified that she received the bottle and on July 29, 1947, examined the blood and prepared the paper "Blood alcohol determination." Defendant offered the paper in evidence. Plaintiffs' objection thereto was sustained on the ground there was no proof that the blood came from the body of Charles Cox, the driver of the car. Defendant then offered to prove that a concentration of .16 per cent alcohol in the blood of any person is intoxicating. Plaintiffs' objection to the offer was sustained.

Defendant contends that the court erred in refusing to admit the paper "Blood alcohol determination" in evidence. Reliance is placed on sections 1920 and 1953f of the Code of Civil Procedure. We assume, although neither the paper which was marked for identification nor the bottle which was not offered is before us, that the paper states the analysis showed a concentration of .16 per cent alcohol in the contents of the bottle.

Section 1920 reads: "Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or by another person in the performance of a duty specially enjoined by law, are prima facie evidence of the facts stated therein." If it had been proved that the blood analyzed by the county coroner's office had been taken from the body of Cox before any extraneous matter had been injected into his body, the coroner's record of the analysis would have been admissible and prima facie evidence of the facts therein stated.

In *People* v. *Smith,* 55 Cal.App. 324 [203 P. 816], the county autopsy surgeon was permitted to answer the question, ''I will ask you whether you performed an autopsy upon the body of Mary Edla Smith?'' He answered that he had, and testified that the undertaker had told him it was the body of Mrs. Smith; that he delivered the stomach to a toxicologist employed by the county coroner's office. The toxicologist testified that the stomach contained potassium cyanide. There was no evidence that the body was in fact that of Mary Edla Smith. The court held, pp. 330-331: '' [T]he identification of the stomach concerning which Dr. Wagner and Professor Maas were allowed to testify must be held to be incomplete, and the evidence as to its contents must be held to have been erroneously admitted. . . . the testimony of Dr.

Wagner that it was Mrs. Smith's body from which he took the stomach is based on rank hearsay, and clearly was inadmissible.'' Manifestly if the testimony of the toxicologist who made the analysis of the stomach was not admissible, the record of the analysis of blood in the present case without tracing the blood to the body of Cox was not admissible.

In *American Mut. etc. Co.* v. *Industrial Acc. Com.*, 78 Cal. App.2d 493 [178 P.2d 40], where the defense was that the deceased, Frank Wilson, was intoxicated, the facts are stated in the opinion, p. 495: ''On the day following the accident one Leon Happel, who at the time was employed to make chemical analyses for the peace officers of San Joaquin County, received a bottle containing some fluid purporting to be blood. He stated that he received the bottle and contents from the Highway Patrol. The bottle bore a label, 'Tuesday 8/14/45, Frank Wilson, San Joaquin County Hospital.' The contents of the bottle were subjected by Happel to a chemical test, which showed the fluid to contain 3.2 milligrams of alcohol per cubic centimeter. Dr. Jesse L. Carr, a pathologist, testified that 3.2 milligrams of alcohol per cubic centimeter in the blood of an individual would indicate inebriation, and a staggering and toxic condition. Happel did not know Wilson, and as far as he knew he had never seen him.'' The court held, pages 496-497: ''Outside of the two empty beer bottles found in Wilson's car, the petitioner's case rests entirely upon the analysis of the blood sample made by the chemist, Happel, and the opinion of Dr. Carr based on this analysis. It may be assumed that the fluid analyzed by Happel was blood, although there is no evidence to show from what manner of body it came, nor when. But, assuming that it was, there is a complete lack of identification of it as the blood of Wilson. The only indication that it might be Wilson's blood is a label with his name on it put on the bottle by somebody, but no one knows who. Even assuming it to be Wilson's blood, there is no showing that it was in the same condition when Happel received it as it was when the sample was taken, nor that Wilson had not taken, or been administered as a measure of first aid, a strong alcoholic stimulant after the accident. The whole matter is one of assumption and pure speculation. It is rudimentary that a specimen taken from a human body for the purpose of analysis must be identified before such specimen or any analysis made from it attains standing as evidence of the condition of the person whose conduct is questioned. Without identification, there is no connection

between the two. Reason dictates that the testimony of a witness that a blood sample contains alcohol without some evidence to show that the blood is that of the person charged amounts to no proof at all. . . . The failure to identify the sample as the blood of Wilson renders the testimony of Happel and Dr. Carr of no evidentiary value at all.''

Mr. Wigmore says, pages 530-531: ''Where the officer's statement is concerned with a *transaction* done, not by him or before him, but *out of his presence* (and out of the presence of his subordinates), the case is one in which obviously he can have no personal knowledge; the assumption must therefore be that his statement is inadmissible. It is to be noted, however, that the sufficient explanation is usually that the officer's duty does not extend to transactions out of his presence, and thus the recording or certifying of them is not covered by his official duty. . . . Thus, for matters not occurring in the presence of the officer, his record or certificate is inadmissible, not only because in general a witness must have personal knowledge, but also because an officer's duty is usually concerned only with matters done by or before him.'' (V Wigmore on Evid., 3d ed., 530, § 1635(3).)[1] See also *Ogilvie* v. *Aetna Life Insurance Co.*, 189 Cal. 406, 409 [209 P. 26, 26 A.L.R. 116]; *Sandel* v. *State*, 126 S.C. 1 [119 S.E. 776, 779]; *Unger* v. *Grimsley*, 138 Miss. 591 [103 So. 341, 342].)

Section 1953f of the Code of Civil Procedure reads: ''A record of an act, condition or event, shall, *in so far as relevant*, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, *and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.*'' (Italics added.) Patently the court had discretion to determine whether the paper was relevant and whether ''the sources of information, method and time of preparation were such as to justify'' the admission of the coroner's record. (See *Luthringer* v. *Moore*, 31 Cal.2d 489, 501 [190 P.2d 1]; *Beb-*

---

[1]Wigmore give this illustration: ''For example, under the English ecclesiastical system it was the duty of the priest officiating at a baptism or a marriage to record the performance of the ceremony as an act done officially by him; but his duty was confined to the performance of the ceremony, and hence his record of the age of the persons baptized or married was not made as a part of his duty, since the age depended on the date of occurrence of birth at another time and place.'' (V Wigmore on Evid., 3d ed., 531.)

*bington* v. *California Western etc. Inc. Co.*, 30 Cal.2d 157, 159-161 [180 P.2d 673, 1 A.L.R.2d 361]; *People* v. *Bjornsen*, 79 Cal.App.2d 519, 533 [180 P.2d 443]; *Pierce* v. *Paterson*, 50 Cal.App.2d 486, 491 [123 P.2d 544]; *Sadjak* v. *Parker-Wolverine Co.*, 281 Mich. 84 [274 N.W. 719, 720]; *Valenti* v. *Mayer*, 301 Mich. 551 [4 N.W.2d 5, 7]; *Johnson* v. *Lutz*, 253 N.Y. 124 [170 N.E. 517]; *Needle* v. *New York Railways Corp.*, 227 App.Div. 276 [237 N.Y.S. 547]; *Wolf* v. *Kaufmann*, 227 App.Div. 281 [237 N.Y.S. 550] (appeal dismissed 254 N.Y. 598 [173 N.E. 882]); *Amsden* v. *Washington Bridge Express Lines*, 248 App.Div. 645 [287 N.Y.S. 855, 856]; *Geroeami* v. *Fancy Fruit & Produce Corp.*, 249 App.Div. 221 [291 N.Y.S. 837, 839]; *Cottrell* v. *Prudential Ins. Co. of America*, 260 App.Div. 986 [23 N.Y.S.2d 335]; *Green* v. *City of Cleveland*, 150 Ohio St. 441 [83 N.E.2d 63]; *Schmitt* v. *Doehler Die Casting Co.*, 143 Ohio St. 421 [55 N.E.2d 644, 646]; *Crowley* v. *Goodrich*, 114 Vt. 304 [44 A.2d 128, 162 A.L.R. 691]; 14 So.Cal.L.Rev. 99, 106.) The statute does not change the rules of competency or relevancy with respect to recorded facts. It does not make that proof which is not proof. It merely provides a method of proof of an *admissible* "act, condition or event." It does not make the record admissible when oral testimony of the same facts would be inadmissible. In the absence of proof that the blood analyzed was the blood of Cox, taken from his body prior to the injection of any fluid therein, oral testimony of the result of the analysis would not be admissible.

In the present cases counsel for defendant told the court that it was not his intention "to call the witness from the undertaking establishment." There was no evidence that any blood was ever taken from the body of Cox, or, if any was taken, the identity of the person who took it, or when it was taken—whether before or after embalming fluid which contains alcohol was injected into the body—how, when, and the identity of the person by whom the container was labeled, or who delivered the bottle to the coroner's office, or that the blood analyzed was that of Cox. Neither the label nor the bottle was identified, offered or received in evidence. No excuse, explanation or justification was given for failure to lay the necessary foundation. The court did not err in refusing to admit the paper in evidence.

The court declined to give the following instructions requested by defendant: "You are instructed that Officer Bouscher had a right to assume that Cox, even if he did make

the boulevard stop before entering the intersection, would not drive his car into the intersection in front of the city car if the city car were then approaching so closely on the through highway as to constitute an immediate hazard." "Unless Officer Bouscher saw, or in the exercise of ordinary care would have seen that the Cox car was not going to make the boulevard stop, he not only had a right to assume that it would stop but also that it would not enter the intersection in front of any car approaching do [sic] closely as to constitute an immediate hazard." Officer Bouscher was the driver of the police car. Defendant assigns error.

These instructions merely state that Bouscher had a right to assume that Cox would observe Vehicle Code, sections 552 and 577. They were fully covered by other instructions. The jury was instructed: that Lincoln Boulevard is a through highway; that it was the duty of Cox to stop in accord with Vehicle Code, sections 477 and 577, "and to thereafter yield the right of way to any car proceeding along Lincoln Boulevard so close to the intersection that its continued forward motion would constitute *an immediate* hazard to his crossing the intersection"; that "a driver of any vehicle which has stopped as required by law at the intersection to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard," and that "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another." The court did not err in declining to give these instructions. (*Flores* v. *Fitzgerald*, 204 Cal. 374, 379 [268 P. 369].)

The court declined to give the following instruction requested by defendant: "If you find from the evidence that the sole proximate cause of the collision was the act of Cox in driving into the intersection when he knew, or in the exercise of reasonable care should have known that the city car was approaching at such speed and at such distance as to constitute danger to himself and the other persons in the Cox car then you must find for the defendant." Defendant assigns error. Without dissecting the instruction which appears to be contradictory in itself, it is sufficient to say that the subject

matter was fully covered by other instructions on the subjects of burden of proof, negligence, proximate cause, concurring cause, and that if the negligence of the defendant was not a proximate cause of the accident, plaintiffs could not recover.

Defendant proposed the following instruction which the court modified by striking the last sentence: "In determining the question of the speed at which the City car and the Cox car were traveling at the time of the collision you are to consider not only the statements of witnesses on that question, but also the physical evidence as shown by the testimony and pictures. Eyewitness testimony of speed is the opinion or conclusion of the witness and you are to give it the weight to which it is entitled when considered with the physical facts." Defendant assigns the modification as error. ■ The first part of the stricken portion is the statement of a mere commonplace, something a juror would know without instruction. ■ The second part is but a repetition of the part given. Further the question of the rate of speed at which vehicles may be traveling is purely a matter of observation. (10 Cal. Jur. 981, § 239.)

The court declined to give the following instruction requested by defendant: "If you find from the evidence that plaintiff Elijah McGowan, while riding in the Hudson car at the time said car was proceeding into and across the intersection at Lincoln Boulevard, saw the city car approaching on said boulevard at such speed and distance that said plaintiff Elijah McGowan knew, or in the exercise of ordinary care should have known, there was imminent danger of collision if the Hudson car continued across and through the intersection, and said plaintiff Elijah McGowan knew, or in the exercise of ordinary care should have known, that the driver of the Hudson car, Charles L. Cox, was not aware of the approaching city car; and if you further find that a person of ordinary care and prudence under the same or similar circumstances would have warned the driver of the Hudson car of the oncoming city car, and such a warning would have enabled said driver, Charles L. Cox, to avoid a collision with said city car by the exercise of ordinary care, then under such circumstances it became the duty of plaintiff Elijah McGowan to give such a warning and under such circumstances if you further find that plaintiff Elijah McGowan failed to give such a warning to the driver of the Hudson car and such failure to warn contributed to the proximate cause of the accident plaintiff Elijah McGowan cannot recover herein." The

instruction applies to the case of McGowan only. Defendant assigns error.

McGowan testified that Cox came to a full stop; that he (Cox) pulled out and he (McGowan) saw a car about 50 feet from the intersection; that at that time the Cox car was "just beginning to go into the intersection" and that he did not say anything to Cox. He also fixed the point of collision as about 7 feet from the point where he first saw the lights of the police car, and testified that the interval between the time he first observed the police car coming and the moment of impact was no longer than the length of time it takes to snap his fingers. ■ As defendant says, a party is entitled to have proper instructions given to the jury on his theory of the case if it is reasonable and there is evidence to support it. (24 Cal. Jur. 826, § 92; *Clement* v. *State Reclamation Board*, 35 Cal.2d 628, 643 [220 P.2d 897].) ■ However, it was not error to refuse the instruction. It is a formula instruction. The pivotal point in determining whether McGowan was guilty of contributory negligence was the interval between the time he saw the police car and the time of the collision. The time element is not mentioned in the instruction. It implies that there was time for McGowan to realize that the police car would not obey the yellow caution light, or yield the right of way to Cox, time to form a judgment that if both cars continued there would be a collision, time to react to the danger, time to warn Cox, and time for Cox to avoid the collision. It does not include the question whether McGowan, placed in a position of imminent peril, in the exercise of ordinary care could have warned Cox of the approach of the oncoming city car in time to have avoided the collision. Nor did it include the rule to the effect that when a person is placed, without his fault, in a position of peril, he may not be held strictly accountable if, in the light of full deliberation, it finally appears that some other course might have been wiser than the one he instictively followed. (*McCance* v. *Montroy*, 75 Cal.App.2d 186, 189 [170 P.2d 109].)

Further, the instruction would have told the jury that upon the facts therein stated McGowan was guilty of contributory negligence without consideration of much evidence as to what had transpired prior to the time Cox reached the intersection, from which evidence the jury could have inferred that Cox was a careful driver and that there was no reason for McGowan to give any warning. The jury was told that if McGowan was negligent in any manner and such negligence

proximately caused or contributed to his injuries, he could not recover. The court did not err in declining to give the formula instruction. (See *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679, 682 [269 P. 529] ; *Mesnickow* v. *Fawcett,* 99 Cal. App. 357, 359 [278 P. 500] ; *Chinnis* v. *Pomona Pump Co.,* 36 Cal.App.2d 633, 641 [98 P.2d 560].)

█ The court gave the following instruction : ''If you find, under the evidence, that officer Bouscher the driver of the city car, because of injury sustained by him, has suffered loss of memory of the events leading up to the collision and of the collision itself, you are instructed that under the law it is presumed that officer Bouscher was exercising ordinary care for his own safety and the safety of others while driving the city car and 'that he was driving the city car in a lawful manner. *The law also assumes that the driver Cox was exercising said ordinary care.* (Requested by defendant; given as modified—modification being underscored portion.)'' Defendant claims the court erred in adding the italicized language to the instruction. In the Cox case, tried with the present cases, the jury found against Cox and for defendant city. In view of the implied finding in these cases that the driver of the police car was negligent, the jury in the Cox case necessarily must have found that Cox was guilty of contributory negligence. Since the jury rejected the claim that Cox was exercising due care, defendant was not prejudiced by the addition.

The cases were well and fairly tried. The jury was fully, fairly and accurately instructed upon all principles of law applicable to the evidence. We find no merit in any of the assignments of error.

The judgments are, and each is, affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 12, 1950, and appellant's petition for a hearing by the Supreme Court was denied January 11, 1951.