# Richmond

## Hubert Edwin Bowman v. Commonwealth of Virginia.

March 7, 1960.

Record No. 5058.

Present, All the Justices.

The opinion states the case.

*James L. Gleaves, Jr.* and *Willis A. Woods* (*Woods & Gleaves,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Hubert Edwin Bowman, hereinafter referred to as defendant, was convicted in the County Court of Wythe County of operating a motor vehicle while under the influence of intoxicants in violation of § 18-75, Code of Virginia, 1950. He appealed to the Circuit Court of Wythe County, where the case was tried *de novo* before the judge without a jury. He was again convicted and his punishment fixed at a fine of $100.00 and costs. We granted this writ of error.

It was stipulated and agreed that the facts were as follows:

Bowman was driving his automobile on Route 52 in Wythe County on March 14, 1959, about 6:30 p. m., when it left the highway and overturned. He received severe injuries to his body and head, rendering him unconscious. While he was recovering consciousness, and was being placed in an ambulance, State Trooper R. W. Litton arrived at the scene of the accident. Shortly thereafter, State Trooper G. A. Farthing also arrived and assisted Litton by summoning a wrecker to remove defendant's vehicle.

Bowman was taken in the ambulance to a hospital located approximately one and one-half miles from the corporate limits of the Town of Wytheville. Litton remained at the scene of the accident to direct traffic. Having observed the odor of alcohol about Bowman as the latter was being placed in the ambulance, Litton began an investigation of the cause of the accident and found an empty Vodka bottle in the wrecked vehicle. He radioed the State Police Dispatcher at a nearby station, and requested that Frank Walker, a police officer of the Town of Wytheville, be directed to go to the hospital and inform Bowman that the latter "was to be charged with driving an automobile under the influence of intoxicants in violation of Code, 1950, § 18-75, and to further inform the defendant of his right to submit to a determination of the amount of alcohol in his blood as shown by a chemical analysis of his blood." Walker, upon receipt of the request, immediately went to the hospital, accompanied by another police officer of

Wytheville, and there informed the defendant of the charge to be placed against him and of his right to have a determination of the amount of alcohol in his blood as shown by a chemical analysis of his blood.

Dr. W. E. Malin was on duty at the hospital, and observed the condition of the defendant. The doctor said he asked Bowman several questions, and in each instance received "a normal response"; and that Bowman understood what was said to him by Walker, and was capable of "consenting to a chemical analysis of blood." Bowman requested that such an analysis be made, and thereupon, a laboratory technician of the hospital withdrew blood from the veins of the defendant. "The blood sample was placed in a sealed container provided by the Chief Medical Examiner. After completion of the taking of the sample the container was resealed in the presence of the accused, after calling the fact to his attention. The defendant lapsed into a coma shortly thereafter. The container was properly equipped with a sealing device, sealed, labeled and properly identified. The sample was delivered to Officer Walker for transporting and mailing to the Chief Medical Examiner. Officer Walker later in the evening, delivered the sample to Trooper Litton, who mailed it to the Chief Medical Examiner. The certificate executed by the office of the Chief Medical Examiner, which was proper in all respects, was returned to Trooper Litton, prior to the time of the defendant's arrest."

The defendant denied any "recollection of having consented" to the making of a chemical analysis of his blood.

Litton, after performing his duties at the scene of the accident, went to the hospital at approximately 8:00 p. m. He there saw the defendant, assisted the nurse who was treating him; but did not talk to Bowman, as he was then going into a state of shock.

On the same night, March 14, 1959, Litton conferred with a local justice of the peace relative to issuing a warrant, and on the following day, March 15, the justice of the peace issued a warrant charging defendant with the offense for which he was tried. Litton said he did not inform Bowman that the warrant had been issued, because of the defendant's condition. At a later date, Litton requested the defendant to advise him when he was released from the hospital, as there was a warrant outstanding for his arrest. Bowman reported to Litton on March 23, 1959, and was then placed under arrest. Litton did not, at that time, say anything to Bowman relative to the determination of the amount of alcohol in his blood.

The report of the chemical analysis of defendant's blood, taken

within two hours of the time of the offense charged against him, showed it was then 0.26 per cent by weight of alcohol. The certificate of the Chief Medical Examiner showing the results of the analysis was introduced in evidence over the objection of the defendant.

Defendant's objection to the introduction of the certificate was that the blood sample was not taken in accordance with §§ 18-75.1 and 18-75.2, 1958 Cum. Supp., Code of Virginia, 1950. More specifically defendant contended that he was not informed by the arresting authorities of his right to submit to a determination of the amount of alcohol in his blood at the time of his arrest; that the sample of his blood was taken prior to his arrest; and that the assistance required to be rendered him in obtaining such determination was not given by the arresting authorities, nor with reasonable promptness.

No question is raised about the manner in which the blood specimen was taken and handled, nor as to the effect and sufficiency of the certificate of the Chief Medical Examiner. No objection was made as to the admissibility of that certificate on the ground that it was hearsay evidence.

■ The first general law on the subject of driving an automobile or other motor vehicle while under the influence of intoxicants was enacted in 1916, Acts 1916, page 640. By amendments in 1934, Acts 1934, page 220, and in 1940, Acts 1940, page 121, its verbiage was somewhat changed, and it now appears as § 18-75, Code of 1950, formerly § 4722 (a) Michie's Code, 1942.

Subsequently, sections 18-75.1,[1] 18-75.2,[2] and 18-75.3[3] were enacted

---

[1] § 18-75.1. "In any criminal prosecution under § 18-75, or similar ordinance of any county, city or town, no person shall be required to submit to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood, breath, or other bodily substance; however, any person arrested for a violation of § 18-75 or similar ordinance of any county, city or town shall be entitled to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood or breath, provided the request for such determination is made within two hours of his arrest. Any such person shall, at the time of his arrest, be informed by the arresting authorities of his right to such determination, and if he makes such request, the arresting authorities shall render full assistance in obtaining such determination with reasonable promptness.
* * *
"Upon the request of the person who was given a chemical test of blood or breath, the results of such test shall be made available to him.
* * *
"Other than as expressly provided herein, the provisions of this section shall not otherwise limit the introduction of any competent evidence bearing upon any question at issue before the court. The failure of the accused to request such a determination is not evidence and shall not be subject to comment in the trial of the case."

to remedy the contradictions which developed in the prosecution of cases under § 18-75, where convictions were sought on evidence of objective symptoms of the behavior and condition of an accused at the time of his alleged offense. The obvious purpose was to provide a more accurate and definite test for the determination whether or not a person was under the influence of intoxicants at the time of the offense charged against him. Each section provides safeguards to protect an accused. He is given the right to have the test, provided his request is made within two hours of his arrest. No one is required to submit to it, and evidence of a failure to request a test is not admissible as evidence. Moreover, a person arrested must, at the time of arrest, be informed by the arresting authorities of his right to such determination, and be rendered full assistance in obtaining same with reasonable promptness; and upon his request the results of such test must be made available to him.

The three sections recognize the evidential value of a determination of the amount of alcohol in the blood of a person as shown by a chemical analysis. The results of such determination are admissible as evidence, and are not charted on a one-way street. They are admissible on behalf of accused or the Commonwealth.

While the first portion of the first paragraph of § 18-75.1 specifically provides that: "any person arrested for a violation of § 18-75 or * * *, shall be entitled to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood or breath, provided the request for such determi-

---

[2] § 18-75.2. "When any blood sample taken in accordance with the provisions of § 18-75.1 is forwarded for analysis to the Office of the Chief Medical Examiner, a report of the results of such analysis shall be made and filed in that office. Upon proper identification of such vial, tube or container, the copy of such certificate as provided for in § 18-75.1 shall, when duly attested by the Chief Medical Examiner or any Assistant Chief Medical Examiner, be admissible in any court or proceeding as evidence of the facts therein stated and the results of the analysis of the blood of the accused."
* * *

[3] § 18-75.3. "In any prosecution for a violation of § 18-75, or any similar ordinance of any county, city or town, the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of the accused's blood or breath in accordance with the provisions of § 18-75.1, shall give rise to the following presumptions:
(1) * * *
(2) * * *
(3) If there was at that time 0.15 per cent or more by weight of alcohol in the accused's blood, it shall be presumed that the accused was under the influence of alcoholic intoxicants."

nation is made within two hours of his arrest, * * *" the provision does not deprive him of the right to such determination before his arrest occurs, nor of the right to use in his defense the results of a chemical analysis, correctly made within the proper time.

Sections 18-75.1, 18-75.2 and 18-75.3 are procedural statutes and remedial in nature. They relate to the promotion of the public safety and provide safeguards for an accused. They avoid mistaken and unadvised determinations of disputed facts by supplying a measure for a more accurate finding. They are to be construed liberally so as to avoid the mischief and advance the remedy of the evils sought to be suppressed. *Tiller* v. *Commonwealth*, 193 Va. 418, 423, 69 S. E. 2d 441; 17 M. J., Statutes, § 72, page 333.

In this case, it is true that the blood sample was not taken in accordance with the provisions of § 18-75.1, in that the request of the defendant was not made within two hours of his arrest, and he was not informed at the time of his arrest of his right to a determination of the amount of alcohol in his blood at the time of his alleged offense. However, the sample was taken at the request of the defendant within two hours after the time of his alleged offense, and after he had been told that he was to be charged with driving an automobile under the influence of intoxicants, and of his right to have a chemical analysis of his blood made. No question is raised as to the accuracy of the report of the chemical analysis by the Chief Medical Examiner, nor as to the process of making the analysis.

Obviously, § 18-75.1 contemplates the situation where an arrest is made at the time of the alleged offense. Here, unusual circumstances caused Officer Litton to delay the arrest for humane reasons. A chemical analysis of the blood of the accused taken nine days after his alleged offense would have been of no value in determining the amount of alcohol in his blood at the time of the offense. Bowman, having exercised his right to have a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis, in effect, demanded such a determination under the statute, and thereby waived any necessity that he be first arrested and the request for such determination be made within two hours of his arrest. Any other conclusion is, we think, contrary to reason and inconsistent with both the action of the defendant and the plain intent of the statute to make available as evidence the ascertainment of the amount of alcohol in the blood of a person at the time of his offense, and would defeat the purposes for which the statute was enacted.

It having been stipulated and agreed that the certificate ex-

ecuted by the Chief Medical Examiner was proper in all respects, the presence of 0.15 per cent or more by weight of alcohol in the defendant's blood gave rise to the presumption that he was under the influence of alcoholic intoxicants at the time of the offense charged against him. § 18-75.3 (3). There was nothing offered in rebuttal of the presumption.

There is no merit in the remaining contentions of the defendant. The police officer who advised him of his rights was an arresting officer, and the arresting authorities rendered him full assistance with reasonable promptness.

"When one is called to assist an officer he, during the time that duty rests upon him, is justified in doing whatever the officer himself might lawfully do." *Byrd* v. *Commonwealth*, 158 Va. 897, page 902, 164 S. E. 400.

The evidence amply supports the conclusion of the trial court, and the judgment complained of is affirmed.

*Affirmed.*