John J. Walsh, J.
The defendant appeals on two grounds, either of which would require a reversal.
The first is that the information was insufficient in that it was actually based on information and belief and there were no supporting affidavits. On its face, the information was sufficient (cf. People v. Bertram, 302 N. Y. 526).
The question presented is whether the information was merely a pleading in a criminal action rather than the source of the court’s jurisdiction (see People v. Belcher, 302 N. Y. 529).
Since the Belcher case is predicated upon a lawful arrest, defendant contends that the arrest was made without a warrant and therefore illegal since the only authority for an arrest for the traffic infraction involved herein is found in section 1193 of the Vehicle and Traffic Law which reads as follows: “ A police officer may, without a warrant, arrest a person, in case of a violation of section eleven hundred ninety-two, if such violation is coupled with an accident or collision in which such person is involved, which in fact has been committed, though not in the police officer’s presence, when he has reasonable cause to believe that the violation was committed by such person.”
The defendant claims that the police officer arrived on the scene and did not see the defendant driving and that there had been no accident or collision.
The testimony of Deputy Sheriff Kroll was to the effect that defendant suddenly swerved to the left in front of him while Kroll was driving along Erie Boulevard and this forced Kroll onto the center mall. There was no collision and the question arises whether the forcing of Kroll onto the center mall constituted an “ accident ”.
The word “accident” is derived from the Latin verb “ Accidere ” meaning to “fall upon, befall, happen, chance.” In this general sense, the word has a wide application but in a legal sense and particularly in the operation of automobiles it has a more limited meaning and includes any untoward operation of the automobile which results in injury to the person or property of another (Black’s Law Dictionary [4th cd.]).
It is unnecessary to pursue this semantic discussion further because of the fact that the second alleged error is determinative of the appeal in this court’s opinion.
The learned Trial Justice permitted into evidence the result of a blood specimen.
Section 1192 (subd. 1) of the Vehicle and Traffic Law provides: “No conviction shall be had under this subdivision after entry *341 of a plea of not guilty unless it is shown by means of a chemical test administered under section eleven hundred ninety-four that there was, within two hours of the defendant’s arrest, ten-hundredths of one per centum or more by weight of alcohol in his blood.”
Thus, even though the transcript contains sufficient testimony independent of the blood test to show the defendant’s ability to drive was impaired, the conviction may not be upheld unless the blood test be properly received in evidence under the statutory command.
It is in this respect that the conviction cannot be sustained.
When the defendant was arrested, he agreed to submit to such a blood test and was subsequently taken to the Rome Hospital where a specimen of blood was taken by a physician. The specimen was then placed in a vial by the doctor and handed to one of the arresting officers, who, in turn, handed the specimen to the attending nurse. This nurse then placed the specimen in a refrigerator, located in the central supply room of the hospital. The nurse who placed the specimen in the refrigerator testified at the trial that she remembered placing the specimen in the refrigerator, but that that was the last she ever saw of the blood sample.
She further testified that the refrigerator in which this specimen was placed was accessible to all hospital personnel and also to authorized nonhospital personnel. She further testified that neither the refrigerator nor the supply room was locked.
Some 12 days later, a member of the Rome Police Department went to the supply room and removed a blood specimen from the unlocked refrigerator. He then proceeded to the post office where he forwarded the specimen via registered mail to the laboratory.
Although defendant failed to object to the introduction of the specimen vial until after it had been received in evidence, he did adequately preserve his objection as to the failure to show a chain of possession of the sample.
The case of People v. Sansalone (208 Misc. 491) sets forth the essential method of proof in such cases (p. 493):
“Identity and unchanged condition must be first established before a specimen can be allowed in evidence and hence it was improper in this case to receive the chemist’s testimony or his report in evidence. Where the sole basis, as in this case, for a conviction of driving while intoxicated is the alcoholic content of a blood specimen, it is essential to show the chain of possession of the blood sample and the unchanged condition of the container from the time it is taken from a defendant until it *342 is delivered to the chemist. This in my judgment was lacking in this case.
“ Blood specimens to be used as evidence in trials such as this should be handled with the greatest of care and all persons who handle the specimen should be ready to identify it and testify to its custody and unchanged condition ’ \
(See, also, People v. McConnell, 19 Misc 2d 1050; People v. Goedkoop, 26 Misc 2d 785; People v. Lesinski, 10 Misc 2d 254; People v. Herman, 8 Misc 2d 991.)
The judgment of conviction is therefore reversed on the law and the facts, the fine remitted and a new trial is ordered.