PEOPLE v. LYALL.

1. CRIMINAL LAW—DRIVING AUTOMOBILE WHILE UNDER INFLUENCE OF INTOXICATING LIQUOR—BLOOD TEST—STATUTES.

Statutory provision requiring written consent for the taking of a sample of blood from the person of one accused of driving a motor vehicle while under the influence of intoxicating liquor after having had his rights under the statute explained to him, and according him the right to have a chemical test administered by a licensed physician or registered nurse under supervision of physician of the accused's own choosing, made for the purposes of a chemical analysis of the blood to determine its alcoholic content, is for the benefit and protection of the accused (PA 1949, No 300, § 625a, as added by PA 1960, No 148).

2. SAME—BLOOD TEST—TOXICOLOGIST AS WITNESS.

Conviction of one accused of driving an automobile while under the influence of intoxicating liquor and who gave his written consent to the withdrawal of blood for the purposes of making a chemical blood test so as to determine the alcoholic content of his blood *held*, error, where toxicologist of the State department of health who certified his analysis of the sample taken pursuant to pertinent statutes was not presented as a witness to confront defendant. (CL 1948, § 325.101 *et seq.*; PA 1949, No 300, § 625a, as added by PA 1960, No 148).

DETHMERS, J., dissenting.

Appeal from Oakland; Dondero (Stanton G.), J. Submitted October 11, 1963. (Calendar No. 35, Docket No. 50,051.) Decided April 6, 1964.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260, 332, 333.

Admissibility in criminal case of evidence that accused refused to submit to scientific test to determine amount of alcohol in system. 87 ALR2d 370.

Otis Virgil Lyall was convicted, under the ordinance of the city of Madison Heights, of driving an automobile while under the influence of intoxicating liquor. Reversed and remanded for new trial.

*Buchanan, Martin, Devers & Bromley (Robert J. Bromley,* of counsel), for defendant.

Dethmers, J. (*dissenting*). This case was submitted to this Court for decision on October 11, 1963. By our rotating assignment system it fell to the then Chief Justice, Leland W. Carr, to write the opinion. He did so and served copies thereof upon the other Justices on October 24, 1963. Because of disagreement therewith by some of them his opinion was held up and was not acted upon before his retirement from this Court on December 31, 1963. Consequently, I adopt it and submit it anew for consideration by the Court. It reads as follows:

"Carr, C. J. Defendant was arrested by officers of the city of Madison Heights, Oakland county, on the 4th of February, 1962, and was prosecuted under an ordinance forbidding the operation of a motor vehicle on a public highway while under the influence of intoxicating liquor, and also for driving a vehicle upon a highway recklessly and heedlessly at a speed and in a manner endangering persons or property. He was tried in municipal court of said city before a jury, which returned a verdict of guilty as charged. Thereupon the court imposed a sentence requiring payment of a fine and costs or the service of 20 days in jail. Following his conviction defendant sought review of the case in circuit court. On his application a writ of certiorari was issued, to which return was duly made. The case was submitted on briefs and the circuit judge hearing the matter rendered an opinion sustaining the action of the municipal

court. On leave granted an appeal to this Court has been taken.

"On trial in municipal court proof was offered on behalf of the people tending to establish that at the time of his arrest defendant was operating an automobile on a public street in an erratic and reckless manner, and that he was intoxicated to such an extent that his ability to drive a vehicle was impaired. It was also shown by the testimony of the officers that following his arrest defendant was advised with reference to his right to a chemical test of his blood under the provisions of section 625a of the Michigan vehicle code*, which was added to the code by PA 1960, No 148 (CLS 1961, § 257.625a [Stat Ann 1961 Rev § 9.2325(1)]). Following the explanation with reference to the chemical blood test contemplated by the statute defendant gave his written consent thereto.

"The testimony further disclosed that a sample of defendant's blood was withdrawn from his person by a doctor at William Beaumont hospital, that the blood was sealed in 2 vials by the doctor, and that the vials were delivered at the police station to the superior of the police officer who had witnessed the withdrawal of the blood and the action of the doctor with reference thereto. The sergeant to whom the vials were delivered forwarded them to the Michigan State department of health at Lansing, Michigan, for analysis and report, which action was authorized under the provisions of PA 1941, No 62 (CL 1948, § 325.101 *et seq.* [Stat Ann 1956 Rev § 14.54 *et seq.*]). Said act made provision for the establishment of a crime detection laboratory by the State department of health, the declared purpose being:

---

"* PA 1949, No 300, as amended (CLS 1956, § 257.1 *et seq.*, as amended [Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp § 9.1801 · *et seq.*])."

" 'to afford the several prosecuting attorneys, the attorney general, the Michigan State police and law enforcement officers of the State of Michigan facilities for examinations and analyses in matters of a criminal nature, to the end that the laws of this State may be enforced and violators brought to trial.' "

It was further declared that the facilities of the laboratory, including the personnel, should at all times be available for use by the officers designated as entitled thereto.

"In due time a report was received from the State department, over the signature of a toxicologist thereof, by the police officer who had forwarded the blood sample, said report indicating that the chemical analysis of such sample showed it to contain a .21% of ethyl grain alcohol by weight. On the trial of the case in municipal court said report was marked as an exhibit and offered in evidence on behalf of the prosecution. It was received over the objection of counsel for defendant. It appears that the objection was based on the claim that the result of the test could not be shown unless the toxicologist giving the test and certifying thereto was produced in court as a witness. In sustaining the competency of the result of the chemical test the circuit judge reviewing the matter on certiorari said, in part:

" 'It is the court's opinion that this section of the statute while it may be a question of first impression in this State, permits. the introduction and receipt into evidence of the official report of the Michigan department of health, division of laboratories, Lansing, and that it is not necessary that the technicians working in said laboratory should be produced for the purpose of giving testimony in the matter. This statute sets up adequate safeguards that must be offered to the defendant before any such blood sample can be taken, and before any such report can be admissible. If the defendant has had the benefit

of those safeguards, then the official report of the laboratory is admissible to give rise to presumptions. stated in the statute.

" 'Such laboratory report is in the same category as any other public record that may be received into evidence without having the officer in charge of those records in court to testify to its genuineness, or to its content as being correct, and the defendant is not entitled to be confronted by such witnesses who are engaged in an impersonal routine administrative type of procedure.'

"The amendment to the motor vehicle code, above cited, was enacted for the benefit and protection of one who is accused of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. Such person is entitled to have his statutory rights explained to him, and his consent to taking the test must be expressed in writing. That the requirements of the law in this respect were observed is not in question in the present case. Under the express language of the statute, where such request is made, the amount of alcohol in the blood at the time of withdrawal from a defendant as shown by the test is admissible in evidence, and is declared to give rise to certain presumptions with reference to the intoxication, or nonintoxication, of the defendant. The statute further provides that one charged with the offense in question shall have the right to demand that the test be given to him if facilities are reasonably available therefor, and the *result* of such test shall be admissible if offered by the defendant. What the statute obviously contemplates is that the test shall be taken with the consent of the defendant in the case and that the alcoholic content by weight of the blood shall be competent for the purpose of its bearing on the question at issue.

"In the course of his performance of public duties the toxicologist who made the test in the instant case was merely acting as an agency to determine a fact which defendant, by his consent to the withdrawal of blood for the purposes of the test, sought to have specifically found. The intent of the legislative enactment was carried out. The result of the test was properly received and defendant was not entitled to insist under the circumstances here presented that the toxicologist making the test should be produced in court.

"In 20 Am Jur, Evidence, § 1035, p 874, it is said:

" 'In many instances statutes make certificates of public chemists, analysts, or inspectors of the chemical analysis of foods, liquors, fertilizers, and other substances, based upon examinations and tests made by them, prima facie evidence of the ingredients of the substance analyzed. * * *

" 'The constitutionality of statutes declaring certificates of public officers of the chemical analysis of substance analyzed by them as admissible has uniformly been sustained. Such statutes do not invade the constitutional guaranty of the right of the accused in a criminal prosecution to be confronted with witnesses.'

"In *Commonwealth* v. *Slavski,* 245 Mass 405 (140 NE 465, 29 ALR 281), the defendant was charged with maintaining a 'liquor nuisance' and also with keeping intoxicating liquor for sale in violation of the law. The alcoholic contents of liquid claimed to be 'moonshine' was shown by 4 certificates signed by the analyst of the State department of health. The statute made such certificates competent evidence and the constitutionality of the statute in such respect was challenged. In discussing at some length the constitutional guaranty with reference to one prosecuted for crime to be confronted by the witnesses against him, it was said (pp 415, 417, 418):

" 'One of the acknowledged exceptions to the face-to-face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution. Wigmore on Evidence §§ 1395–1398. It cannot be thought that the Constitution was intended to close the door to the legislative department of government to establish new public records with like probative value. Existing public records did not become rigid for all time for evidential purposes. * * *

" 'The determination of the percentage of alcohol in liquor at a specified temperature is the ascertainment of a fact by well recognized scientific processes. Chemical action and measurement in such an analysis do not depend in general upon the quickness of apprehension, retentiveness of memory, temperament, surmises or conjectures, of the individual. The admission in evidence of the record of such a fact made by a public officer pursuant to statutory obligation would be as likely to be accurate as many of the public records which have been held to be admissible. There would seem to be as little likelihood of variation of result in such an analysis between different chemists as in the observation of the weather, enumeration of proprietors, or the notation of the weights on scales by other classes of public officers. The general court may have felt that it was wise and just with reference to owners of liquor and prospective defendants, as well as to the general public, to provide for an impartial analysis by a public officer in order that the fact of alcoholic content in liquor seized might be established according to a scientific standard in which confidence might be reposed.'

"In *Bowman* v. *Commonwealth,* 201 Va 656 (112 SE2d 887), a sample of blood drawn from one accused of operating a motor vehicle while under the influence of intoxicating liquor was sent by mail to

the chief medical examiner of the State for analysis. A certificate was returned showing weight of alcohol therein to be 0.26%. As in the Massachusetts case, above cited, a statute made the certificate admissible as evidence of the fact therein stated as the result of the blood analysis. The Virginia statute is analogous in its procedural provisions to the Michigan act in question here.

"The admissibility of authorized records of public officers or departments of government has been repeatedly recognized in civil cases. Among such decisions are *McGowan* v. *City of Los Angeles,* 100 Cal App 2d 386 (223 P2d 862, 21 ALR2d 1206), and *Smith* v. *Mott* (Fla), 100 So2d 173. In this connection it is said in 32 CJS, Evidence, § 637, p 489:

" 'A record or document kept by a person whose public duty it is to record truly the facts stated therein is ordinarily admissible in evidence.'

"We think the Michigan statute must be construed as evidencing an intent to make admissible in evidence in a prosecution for operating an automobile on a public highway while under the influence of intoxicating liquor the *result* of the chemical test specified. Insofar as such result is concerned it necessarily appears from the certificate of the toxicologist who conducted the test which obviously involved the ascertaining of a single question of fact. No claim is made here that the individual conducting such test was not fully competent to do so. As before indicated, he acted with the consent of the defendant who must be presumed to have known the purpose for which the test would be made. In agreeing to the test he must be presumed to have consented also to the introduction of the result in evidence. Having given such consent he was not, under the facts here involved, entitled to object to the record proof of the result or to insist that the toxicologist be produced

as a witness in order that he might testify to the fact shown by the certificate.

"The judgment entered in circuit court should be affirmed."

KAVANAGH, C. J.   The facts necessary to an understanding of this case are set forth in former Chief Justice CARR's opinion, which has been adopted by Justice DETHMERS.

The following questions are presented:

(1)   Did the lower court err in admitting the State department of health report into evidence in a criminal prosecution without the testimony of the person who prepared the report because either (a) this violated defendant's State and Federal constitutional right to be confronted with the witnesses against him, or (b) it amounted to failure to prove beyond a reasonable doubt the identity of the blood specimen analyzed?

(2)   Did the lower court err in not directing a verdict for failure to advise defendant of his statutory right to have a blood test made by his own physician in addition to that made by the State?

Since it cannot be controlling, we shall first discuss the second question.   Defendant does not contest the testimony of the police officer that he advised the defendant of his "constitutional rights."   Since no record was made at the trial, we have no way of knowing whether defendant was advised as to his rights under the statute.[1]   (See 1961–1962 OAG, No 3558, p 45, dated February 21, 1961.)   We need only point out the necessity for advising defendant as to his right under both subsections (1) and (3) of the statute.[2]

---

[1] PA 1949, No 300, § 625a, as added by PA 1960, No 148 (CLS 1961, § 257.625a [Stat Ann 1963 Cum Supp § 9.2325(1)]).

[2] Subsection (1) dictates that the accused be advised of his right to refuse to submit to the State-administered blood test.   Subsection (3) dictates that the accused be advised of his right to have a sep-

In his motion for a new trial in the municipal court and in seeking reversal on certiorari in circuit court, defendant claimed error in both areas suggested by (1)(a) and (1)(b) above. On appeal to this Court, defendant concentrates his argument on (1)(a)—confrontation of witnesses—and this is the line taken by former Chief Justice Carr's opinion. However, the constitutional problem of confrontation of the witnesses becomes moot in the light of our view that there is a complete break in the proof offered by the prosecution to identify the blood specimen to permit the analysis to be admitted in evidence.

The problem is included in the framework of the first question in the statement of questions involved, which questions the admissibility of the report without the testimony of the "technician who prepared" it.

"Whenever evidence of a chemical analysis of a specimen of blood, urine, or breath * * * is offered, there always is the problem of showing that the specimen analyzed actually was that taken from the subject person. The greater the number of persons who have handled a particular specimen, the greater the chance of contamination or a mix-up, and the more difficult is the task of proving identification in the courtroom. Seldom does the attorney offering such evidence avoid the need to produce on the witness stand each person who had anything to do with the specimen." (Chemical Tests and the Law, p 62—Donigan[3].)

The basis for the necessity of the production as a witness of each person who handled the specimen is found in the extent of the burden of proof with which each prosecutor is faced, namely, proof beyond a reasonable doubt. The statutes here involved dictate

arate blood test administered at accused's expense by a physician of his own choice.

[3] General Counsel for The Traffic Institute, Northwestern University.

that a State department of health report indicating a certain percentage of alcoholic weight in a specimen of blood shall be admissible and shall sustain the prosecutor's burden of proof on the issue of intoxication of the person from whom the blood specimen was extracted.

In any prosecution under a drunk driver statute or ordinance, the prosecutor retains a burden to prove, beyond a reasonable doubt, that the defendant was driving a vehicle while he was intoxicated. In the instant case, in attempting to do so, the prosecutor offered in evidence a toxicologist's report to the effect that a blood specimen, purportedly defendant's, contained the prescribed alcoholic weight which would indicate intoxication. However, there is a question as to whether the State has proved that the blood reportedly analyzed was that of defendant. .

The above-quoted statement of Donigan, an acknowledged authority in this field, regarding "the need to produce on the witness stand each person who had anything to do with the specimen," is well fortified by court decision. While this Court has not previously considered the problem, the treatment accorded it by our sister States is enlightening.

A New York court said this on the subject:

"Blood specimens to be used as evidence in trials such as this should be handled with the greatest of care and all persons who handle the specimen should be ready to identify it and testify to its custody and unchanged condition.

"In *Novak* v. *District of Columbia* (1947), 82 App DC 95 (160 F2d 588), that court reversed a conviction of driving a motor vehicle while under the influence of intoxicating liquor, saying: 'It is our holding that the laboratory records and the chemist's testimony respecting the analysis were not properly admissible in evidence because the District of Columbia failed sufficiently to identify the sample from

which the analyses were made as being that sample taken from appellant. The police officer who secured the sample was present in court and testified to the manner in which he labeled the flask containing appellant's urine and how he placed his initials on the label. The chemist, when he testified, had beside him the bottle of urine on which he made an analysis. But no effort was made to hand to the police officer, who was present in court, the bottle the chemist had used to see if he could identify it as the bottle he had labeled and initialed. There is missing a necessary link in the chain of identification.' " *People* v. *Sansalone* (1955), 208 Misc 491, 493 (146 NYS2d 359, 361), relied upon in *People* v. *Pfendler* (1961), 29 Misc 2d 339 (212 NYS2d 927).

The appellate court of Illinois effectively stated the well-founded additional requirement that the unchanged condition of the specimen be established:

"A blood specimen is something that could be conceivably tampered with and for that reason if the analysis of a blood specimen is to be offered and admitted in evidence on the issue of intoxication, extreme caution should be used in handling the specimen. The custody of the specimen should be accounted for from the time of the extraction to the analysis and the unchanged condition of the specimen from the time of the taking to the analysis should be established. In the absence of such a showing, a blood analysis is not competent and admissible in evidence." *Woolley* v. *Hafner's Wagon Wheel, Inc.* (1960), 27 Ill App 2d 1, 10 (169 NE2d 119, 123.)

Though reversing the decision ([1961] 22 Ill 2d 413 [716 NE2d 757]), the supreme court of Illinois did not depart from this requirement but held that the testimony concerning the laboratory procedure employed here laid a proper foundation of identity and integrity of the specimen for purposes of the admission of blood test results in this, a civil case.

The supreme court of New Hampshire reversed a conviction of driving under the influence of intoxicating liquor with these comments:

"One of the most important prerequisites for the admission of the results of chemical tests for intoxication is that the specimen analyzed shall be traced to the accused. Note, 51 Mich L Rev 72, 79 (1952); annotation, 21 ALR 2d 1216. The State is required to establish the essential links in the chain of evidence relied on to identify the blood analyzed as being the blood taken from the accused." *State* v. *Reenstierna* (1958), 101 NH 286–288 (140 A2d 572, 574).

The former Chief Justice refers to the case of *Bowman* v. *Commonwealth,* 201 Va 656 (112 SE2d 887), and in support of his holding of admissibility, proffers the similarity of the Virginia statute to that adopted by the Michigan legislature. That case did not deal with the problem of identity of the specimen, however, presumably, as the court remarked, because "no question [was] raised about the manner in which the blood specimen was taken and handled." (p 659)

That decision did not, therefore, alter the thrust of previous decisions by the Virginia court which had reversed such convictions for failure of the prosecution to maintain its burden of proof of identity of the specimen.

In one such Virginia case—*Rodgers* v. *Commonwealth* (1955), 197 Va 527 (90 SE2d 257)—the proofs went much further than those in the instant case. There all the necessary witnesses, including the doctor supervising the extraction and the toxicologist who prepared the report, testified at the trial, but even the testimony of these witnesses left sufficient doubt as to who mailed and who received the specimens at the laboratory. On whether this defect was sufficient for reversal, the court said (pp 530, 531):

"When it had been received, in what it had been contained, by whom and in what manner the defendant's name appeared, the evidence does not disclose. Neither container nor labels were produced at the trial.

"Such inconclusive and unsatisfactory evidence cannot be said to establish beyond a reasonable doubt that the blood analyzed was in fact the blood of defendant. Such an analysis is important evidence in a trial of this sort, and care must be exercised to establish the essential links in the chain of evidence relied on to identify the blood analyzed as being the blood taken.

" 'It is rudimentary that a specimen taken from a human body for the purpose of analysis must be identified before such specimen or any analysis made from it attains standing as evidence of the condition of the person whose conduct is questioned. Without identification, there is no connection between the two.' * * * *McGowan* v. *City of Los Angeles,* 100 Cal App 2d 386, 390 (223 P 2d 862, 21 ALR 2d 1206, at page 1212).

"In proving identity legal presumptions may of course be relied on unless rebutted, *e.g.,* that articles regularly mailed are delivered in substantially the same condition in which they were sent, *Schacht* v. *State,* 154 Neb 858 (50 NW2d 78) ; and that an analysis made by an official in the regular course of his duties was properly made, 20 Am Jur, Evidence, §§ 170, 171, pp 174–178. But where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis."

The reference in the *Rodgers Case* to *McGowan* v. *City of Los Angeles, supra,* is especially poignant since former Chief Justice Carr relies upon that California case in attempting to establish admissibility. While dictum in that case indicates that such a blood test report is admissible under the

California statute making public records admissible, the report in that civil case was declared *inadmissible* because of failure of proof of identity of the specimen. The court's comments in this regard are revealing:

"The statute does not change the rules of competency or relevancy with respect to recorded facts. It does not make that proof which is not proof. It merely provides a method of proof of an *admissible* 'act, condition or event.' It does not make the record admissible when oral testimony of the same facts would be inadmissible. In the absence of proof that the blood analyzed was the blood of Cox, * * * oral testimony of the result of the analysis would not be admissible." *McGowan* v. *City of Los Angeles*, 100 Cal App 2d 386, 392 (223 P2d 862, 866, 21 ALR 2d 1206).

It is also noteworthy that in the only other cases cited by the former Chief Justice (the *Slavski* and *Mott Cases*,[4]) no problems as to the identity of the specimens involved were raised or discussed.

Finally, the supreme court of South Carolina has recognized an insufficiency in proof of identity in a pertinent civil case where, of course, the burden of proof is less demanding than in a criminal prosecution. In that case (*Benton* v. *Pellum* [1957], 232 SC 26 [100 SE2d 534]), the proofs of identity were found to be insufficient because at various points in its journey the custody and integrity of the specimen was not attested to. The court remarked (p 33):

"The problem of showing that the specimen analyzed actually was taken from the subject person is frequently a difficult one, for ordinarily the specimen is passed through several hands before being analyzed and it is not possible to establish identity

---

[4] *Commonwealth* v. *Slavski*, 245 Mass 405 (140 NE 465, 29 ALR 281); *Smith* v. *Mott* (Fla), 100 So 2d 173.—REPORTER.

by a single witness. Many cases on the subject will be found in an annotation in 21 ALR 2d, beginning on page 1216. While proof need not negative all possibility of tampering, *People* v. *Riser,* 47 Cal2d 566 (305 P2d 1), it is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed."

From the above cases can be deduced a broad acceptance of the principle that testimony is necessary from persons with personal knowledge of each step in the passage of the specimen to establish sufficiently the identity of the specimen.

In the present case no one testified concerning the custody or integrity of the blood specimen after it was mailed to the State laboratory from Madison Heights. Many things could have happened to the specimen from the time of mailing, receipt by the State department of health, division of laboratories, at Lansing, Michigan, during the time it was handled by technicians working in the laboratory, the transcribing of the report of the toxicologist, and the mailing of the report to the police department at Madison Heights. The failure of the prosecution to offer such proof made the toxicologist's report inadmissible.

Insufficient proof of the identity of the blood specimen having existed, and the report being inadmissible, reversible error was committed.

The judgment of the lower court is set aside, and a new trial granted.

Souris, J., concurred with Kavanagh, C. J.

Black, J. (*concurring in reversal and remand*). Since the "blood test" issue in drunk driving cases is arising with increased frequency in other jurisdic-

tions as well as here, I believe it advisable that the complete statute, under which today's solely reviewable question arose,* should be set forth in our reports. That statute is known as section 625a of the Michigan vehicle code (CLS 1961, § 257.625a [Stat Ann 1963 Cum Supp § 9.2325(1)]). It entered the code in 1960, by PA No 148, and reads:

"Sec. 625a. (1) In any criminal prosecution relating to driving a vehicle while under the influence of intoxicating liquor where a person who, after being first advised and acknowledging in writing that he is not required by law to give his consent to a chemical test, shall have given his written consent to a chemical test of his blood for the purpose of determining the alcoholic content of his blood, the amount of alcohol in such person's blood at the time alleged as shown by such chemical analysis of the person's blood, shall be admissible and shall give rise to the following presumptions, and in the event any such tests are given, the results of such tests shall be made available to the person so charged or his attorney prior to the day of the trial and must be introduced into evidence by the prosecution upon the demand of the defendant:

"(a) If there was at that time 0.05% or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"(b) If there was at that time in excess of 0.05% but less than 0.15% by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

---

* "Did the municipal court of Madison Heights err in receiving into evidence in a criminal trial, where defendant is charged with drunk driving a toxicologist's report of the alcoholic content in a specimen of blood extracted from the defendant, without producing the technician who prepared the report to testify?"

"(c) If there was at that time 0.15% or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor; however, such presumption shall be subject to rebuttal.

"(2) Only a duly licensed physician or duly registered nurse, under the supervision of a licensed physician, acting at the request of a police officer, can withdraw blood for the purpose of determining the alcoholic content therein under the provisions of this act.

"(3) A person charged with driving a vehicle while under the influence of intoxicating liquor shall be permitted to have a licensed physician or registered nurse, under the supervision of a physician of his own choosing, administer a chemical test as provided in this section within a reasonable time after his detention, and the results of such test shall be admissible if offered by the defendant and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. Any person charged with driving a vehicle while under the influence of intoxicating liquor shall have the right to demand that the test provided for in this section must be given him, provided facilities are reasonably available to administer such test, and the results of such test shall be admissible if offered by the defendant and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. The defendant shall be advised of his right to the test provided for in this subsection.

"(4) The refusal on the part of any person to submit to any such test shall not be admissible in any criminal prosecution relating to driving a vehicle while under the influence of intoxicating liquor.

"(5) The provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor."

Section 625a goes to the ultimate in protecting the rights of persons who are charged with drunk driving. The test permitted by division (1) cannot be made without the advice and consent of the accused. Such advice and consent must be—as it was here—acknowledged and declared in writing by the accused. The same division grants to the accused a unilateral right to have such test made and to have the results thereof "introduced into evidence." The section provides for him another like right, that of having his own test made under division (3), with "the results of such test" made admissible upon his exclusive volition. And it guarantees to him, in case he has consented to a division (1) test, knowledge of the "results" of such test prior to trial.

Finally, reaching the reviewable question, it preserved and now preserves as a matter of legislative intent this defendant's right to have the chemical analysis in question proved by sworn testimony of the analyst. Such intent is gleanable from the absence in section 625a of a provision making the analyst's certificate distinguished from his testimony admissible in evidence; also from section 2 of the statute under which the analyst of the State crime detection laboratory made the consented analysis. Said section 2 (CL 1948, § 325.102 [Stat Ann 1956 Rev § 14.55]) provides that "the fees of expert witnesses of such laboratory" shall be paid by State appropriation. This to me manifests legislative intent that such experts are to testify to their findings rather than certify them. And such intent is in keeping with a time-tried and otherwise applicable rule of evidence.

The foregoing in mind, I cannot agree either (a) that the certificate of the analyst was admissible in lieu of his testimony, as former Chief Justice CARR has written, or (b) that it is necessary in this case to consider the "broad" principle Chief Justice

KAVANAGH espouses. It is sufficient to say that the defendant's raised, saved and brief-stated point of law should be upheld.

I concur in reversal and remand for retrial.

KELLY, SMITH, and O'HARA, JJ., concurred with BLACK, J.

ADAMS, J., took no part in the decision of this case.